HOMER R. VERNON, EMPLOYEE PLAINTIFF v. STEVEN L. MABE BUILDERS, EMPLOYER, AND NATIONWIDE INSURANCE, CARRIER, DEFENDANTS

No. 275A93

(Filed 17 June 1994)

1. Workers' Compensation § 285 (NCI4th) — qualification for permanent partial and permanent total disability — most favorable remedy

Where an employee qualifies for both permanent partial disability benefits under N.C.G.S. § 97-31 and permanent total disability benefits under N.C.G.S. § 97-29, the legislature, having created the two mutually exclusive remedies side by side, intended that the employee have the benefit of the more favorable remedy.

Am Jur 2d, Workers' Compensation § 383.

2. Workers' Compensation § 339 (NCI4th) — Form 26 compensation agreement — approval by Industrial Commission — determination of fairness

The Industrial Commission is statutorily required to make a full investigation and determination that a Form 26 compensation agreement is fair and just in order to approve the agreement so as to assure that the settlement is in accord with the intent and purpose of the Workers' Compensation Act that an injured employee receive the disability benefits to which he is entitled, and, particularly, that an employee qualifying for disability compensation under both sections 97-29 and 97-31 have the benefit of the more favorable remedy. N.C.G.S. §§ 97-17, 97-82.

Am Jur 2d, Workers' Compensation §§ 507-516.

VERNON v. STEVEN L. MABE BUILDERS

[336 N.C. 425 (1994)]

**3. Workers' Compensation § 339 (NCI4th) — Form 26 compensation agreement — permanent partial disability — entitlement to total disability — remand for determination of fairness**

In approving a Form 26 compensation agreement between plaintiff and defendants for permanent partial disability benefits under N.C.G.S. § 97-31, the Industrial Commission failed to act in a judicial capacity to determine the fairness of the agreement where plaintiff's physician rated plaintiff as having a fifteen percent permanent disability of the back and stated that he did not think plaintiff could return to work; thus, plaintiff may have been entitled to permanent total disability benefits under N.C.G.S. § 97-29 as well as permanent partial disability benefits based on the fifteen percent rating under section 97-31; and an employee in the Industrial Commission claims department simply checked the rating on the form against the medical report attached thereto, verified the payment information, and approved the agreement. Therefore, the claim must be remanded to the Industrial Commission for a full investigation and determination as to whether the Form 26 compensation agreement is fair and just and in accord with the intent and purpose of the Workers' Compensation Act considering plaintiff's entitlement to benefits under N.C.G.S. § 97-29.

**Am Jur 2d, Workers' Compensation §§ 507-516.**

Justice MEYER dissenting.

Appeal by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 110 N.C. App. 552, 430 S.E.2d 676 (1993), affirming a decision of the Industrial Commission. On 7 October 1993 this Court allowed plaintiff's petition for discretionary review of an additional issue. Heard in the Supreme Court 2 February 1994.

*Elliot Pishko Gelbin & Morgan, P.A., by J. Griffin Morgan, for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, by Thomas M. Clare and Ashley Baker, for defendant-appellees.*

*Lore & McClearen, by R. James Lore; and Patterson, Harkavy & Lawrence, by Henry N. Patterson, Jr., and Martha A. Geer, for The North Carolina Academy of Trial Lawyers, Amicus Curiae.*

**VERNON v. STEVEN L. MABE BUILDERS**

[336 N.C. 425 (1994)]

WHICHARD, Justice.

This is a workers' compensation case. Plaintiff, Homer R. Vernon, sustained injuries to his back while lifting a heavy door in the employment of defendant Steven L. Mabe Builders. Plaintiff signed a Form 26 compensation agreement ("Supplemental Memorandum of Agreement as to Payment of Compensation") for permanent partial disability benefits under N.C.G.S. § 97-31, which agreement was approved by the Industrial Commission ("Commission"); subsequently, plaintiff moved to set aside the agreement to pursue a claim for permanent total disability benefits under N.C.G.S. § 97-29. The Commission denied plaintiff's motion.

On appeal to the Court of Appeals, plaintiff argued, *inter alia*, that in approving the Form 26 compensation agreement between plaintiff and defendants, the Commission did not act in a judicial capacity, as the statute required, to determine the fairness of the agreement. The Court of Appeals majority disagreed and affirmed the Commission's decision. *Vernon v. Steven L. Mabe Builders*, 110 N.C. App. 552, 558-59, 430 S.E.2d 676, 680 (1993). Judge Wynn dissented, believing the Commission was required to act in a judicial capacity to determine whether the Form 26 compensation agreement was fair. Plaintiff exercised his right to appeal to this Court pursuant to the dissent.

The dispositive question is whether the statute requires the Commission, in approving Form 26 compensation agreements, to act in a judicial capacity to determine the fairness of the agreement. We hold that it does, and we accordingly reverse the Court of Appeals.

I.

Plaintiff, a fifty-two-year-old former sharecropper, was employed by defendant-employer as a carpenter's helper. He performed a variety of construction jobs, including picking up debris and loading it on trucks, pouring footings, trimming, hanging doors, and working on scaffolds to hang molding.

Plaintiff was injured on 16 October 1986 while lifting a heavy, solid-core door; he subsequently underwent surgery to correct a herniated disc. Defendants admitted liability and began paying plaintiff compensation pursuant to a Form 21 agreement ("Agreement for Compensation for Disability") approved by the Commission on 19 January 1987.

On 13 August 1987 plaintiff reached maximum medical improvement. Plaintiff's physician rated plaintiff as having a fifteen percent permanent disability of the back and stated that he did not think plaintiff could return to work. Defendants stopped paying plaintiff's temporary total disability benefits on 13 August 1987. Shortly thereafter, defendants' insurance adjuster sent a Form 26 compensation agreement stating that plaintiff was entitled under section 97-31 of the Workers' Compensation Act ("Act") to forty-five weeks of compensation at the rate of $264.02 per week. The adjuster wrote plaintiff that once the form had been approved by the Commission, plaintiff would again begin receiving his payments.

Plaintiff's wife had to read the letter and the Form 26 compensation agreement to him. Plaintiff — who was illiterate, unrepresented, and unknowledgeable about workers' compensation benefits — signed the Form 26 compensation agreement and returned it to defendants. He was unaware at the time that he had any other choice.

Defendants submitted the Form 26 compensation agreement to the Commission for approval. An employee in the claims department simply checked the rating listed on the form against the physician's report attached thereto, verified the payment information, and approved the agreement. She was not an attorney and was unaware that under *Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 95-96, 348 S.E.2d 336, 340 (1986), an employee entitled to permanent partial disability benefits under section 97-31 of the Act, but also, because his injuries render him totally and permanently disabled, entitled to permanent total disability benefits under section 97-29, may select the more favorable remedy.

On 7 September 1989 plaintiff moved to set aside the Form 26 compensation agreement. After a hearing on 21 March 1990, the deputy commissioner concluded that there was no error due to fraud, misrepresentation, undue influence or mutual mistake of fact, and, as noted, denied plaintiff's motion. The Commission adopted and approved the opinion and award of the deputy commissioner.

The Court of Appeals affirmed, as noted, concluding that "there is no requirement — either in the Workers' Compensation Act, The Rules of the Industrial Commission, or in case law — that the Commission, in approving a Form 26 compensation agreement, determine that the agreement is fair." *Vernon*, 110 N.C. App. at 559, 430 S.E.2d at 680. The court drew a distinction between "compensa-

tion agreements," such as the Form 26 compensation agreement
at issue, and "compromise settlement agreements." "It is true that
*compromise* settlements must be determined to be fair and equitable
and in the best interests of the parties before they will be approved
by the Commission," it stated, *id.* at 558, 430 S.E.2d at 680, "[but]
the agreement at issue is not a compromise settlement agreement,"
*id.* at 559, 430 S.E.2d at 680. Judge Wynn dissented, noting that
this Court has stated that " '[t]he Industrial Commission stands
by to assure fair dealing in *any* voluntary settlement.' " *Id.* at
559-60, 430 S.E.2d at 681 (quoting *Biddex v. Rex Mills*, 237 N.C.
660, 663, 75 S.E.2d 777, 780 (1953) (emphasis added) ). The Court
of Appeals also concluded that there was sufficient evidence in
the record to support the Commission's finding that the Form 26
compensation agreement was not entered into by reason of
misrepresentation or mutual mistake, and that plaintiff was not
entitled to have the agreement set aside pursuant to N.C.G.S.
§ 97-17 (1991). *Id.* at 557-58, 430 S.E.2d at 679-80.

## II.

Plaintiff contends first that the Court of Appeals erred in
concluding that "there is no requirement . . . that the Commission,
in approving a Form 26 compensation agreement, determine that
the agreement is fair." We agree.

The Act provides:

### § 97-17. Settlements allowed in accordance with Article.

Nothing herein contained shall be construed so as to pre-
vent settlements made by and between the employee and
employer so long as the amount of compensation and the time
and manner of payment are in accordance with the provisions
of this Article. A copy of such settlement agreement shall
be filed by employer with and approved by the Industrial
Commission: Provided, however, that no party to any agree-
ment for compensation approved by the Industrial Commission
shall thereafter be heard to deny the truth of the matters
therein set forth, unless it shall be made to appear to the
satisfaction of the Commission that there has been error due
to fraud, misrepresentation, undue influence or mutual mistake,
in which event the Industrial Commission may set aside such
agreement.

N.C.G.S. § 97-17 (1991). It further provides:

**§ 97-82. Memorandum of agreement between employer and employee to be submitted to Commission on prescribed forms for approval.**

If after seven days after the date of the injury, or at any time in case of death, the employer and the injured employee or his dependents reach an agreement in regard to compensation under this Article, a memorandum of the agreement in the form prescribed by the Industrial Commission, accompanied by a full and complete medical report, shall be filed with and approved by the Commission; otherwise such agreement shall be voidable by the employee or his dependents.

If approved by the Commission, thereupon the memorandum shall for all purposes be enforceable by the court's decree as hereinafter specified.

N.C.G.S. § 97-82 (1991).

The Commission recognizes, pursuant to these sections, two forms of voluntary settlements, namely, the compensation agreement in uncontested cases, and the compromise or "clincher" agreement in contested or disputed cases. In North Carolina the uncontested claims procedure takes the form of a voluntary settlement agreement between parties, subject to the approval of the Commission. For example, as was done in plaintiff's case, "[a] Form 26 Agreement may be entered into after the end of the healing period to provide for payment of . . . permanent partial disability benefits [pursuant to section 97-31] based upon a doctor's evaluation, or 'rating,' of any remaining physical impairment." N.C. Industrial Commission, *Bulletin: Information About The North Carolina Workers' Compensation Act* 5 (1 January 1993). Under compromise agreements "the employee receives a lump sum of money and payment of any remaining medical compensation bills in return for terminating the claim and any right to reopen it." *Id.*

Over forty years ago, interpreting sections 97-17 and -82, this Court stated:

The Industrial Commission stands by to assure fair dealing in *any* voluntary settlement . . . .

. . . .

. . . [Section 97-82] was inserted in the statute to protect the employees of the State against the disadvantages arising out of their economic status and give assurance that the settlement is in accord with the intent and purpose of the Act. Therefore, in approving the settlement in which compensation is awarded, the Commission acts in a judicial capacity. The voluntary settlement as approved becomes an award enforceable by a court decree.

*Biddex*, 237 N.C. at 663, 75 S.E.2d at 780 (emphasis added). Later, this Court stated that it presumed the Commission approves voluntary settlements "only after a full investigation and a determination that the settlement is fair and just." *Caudill v. Manufacturing Co.*, 258 N.C. 99, 106, 128 S.E.2d 128, 133 (1962) (considering a compromise agreement). "The law thus undertakes to protect the rights of the employee in contracting with respect to his injuries." *Id.*

When an employee's injuries are included in the schedule set out in section 97-31, he would be entitled to permanent partial disability benefits under that section. When an employee's injuries render him totally and permanently disabled, he would, alternatively, be entitled to compensation benefits under section 97-29; section 97-31 is not the "exclusive remedy for an employee who also qualifies for compensation under section 29." *Whitley*, 318 N.C. at 98, 348 S.E.2d at 341. Indeed,

[a]n employee may recover compensation under section 31 without regard to actual loss of earning ability. Diminished earning ability is conclusively presumed with respect to the losses included in the schedule for the period specified therein. . . . *[S]ection 31 . . . was not, we believe, intended to mean that the presumption . . . should be used to the . . . detriment [of the employee who can prove diminished earning capacity].* The purpose of the schedule [in section 31] was to expand, not restrict, the employee's remedies.

*Id.* at 99, 348 S.E.2d at 342 (citations omitted) (emphasis added).

[1]   Applying established rules of statutory construction, we have concluded that the legislature, having created the two mutually exclusive remedies side by side, intended that the employee qualifying for both have the benefit of the more favorable one. *See Gupton v. Builders Transport*, 320 N.C. 38, 42, 357 S.E.2d 674, 678 (1987) (" 'The pervasive canon of statutory construction [is] that where

VERNON v. STEVEN L. MABE BUILDERS

[336 N.C. 425 (1994)]

two remedies are created side by side in a statute the claimant should have the benefit of the more favorable.' ") (quoting 2 Arthur Larson, *The Law of Workmen's Compensation* § 58.25 (1987)).

> One purpose of the Act is to compensate injured employees for lost earning ability. 'The term disability means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' [N.C.G.S.] § [97-]2(9). The Act represents a compromise between the employer's and employee's interests. The employee surrenders his right to common law damages in return for guaranteed, though limited, compensation. The employer relinquishes the right to deny liability in return for liability limited to the employee's loss of earning capacity. . . . *Allowing a totally and permanently disabled employee lifetime compensation effectuates the purpose of the Act to compensate for lost earning ability.*

*Whitley*, 318 N.C. at 98-99, 348 S.E.2d at 341-42 (citations omitted) (emphasis added).

> [T]he entire compensation system has been set up and paid for, not by the parties, but by the public. The public has ultimately borne the cost of compensation protection in the price of the product, and it has done so for the specific purpose of avoiding having the disabled victims of industry thrown on private charity or public relief. To this end, the public has enacted into law a scale of benefits that will forestall such destitution. It follows, then, that the employer and employee have no private right to thwart this objective by agreeing between them on a disposition of the claim that may, by giving the worker less than this amount, make him a potential public burden.

3 Arthur Larson, *The Law of Workmen's Compensation* § 82.41, at 15-1204, -1205 (1993).

[2] We hold, therefore, that the statute requires, on the part of the Commission, a full investigation and a determination that a Form 26 compensation agreement is fair and just, in order to assure that the settlement is in accord with the intent and purpose of the Act that an injured employee receive the disability benefits to which he is entitled, and, particularly, that an employee qualify-

ing for disability compensation under both sections 97-29 and -31 have the benefit of the more favorable remedy.

Defendants contend that the legislature requires "a full investigation and a determination that the settlement is fair and just" only in the case of compromise agreements, not in the case of Form 26 compensation agreements. The Commission, defendants point out, has thus interpreted the statute; rule 501(4) of the Workers' Compensation Rules states that "[compensation] agreements in proper form and conforming to the provisions of the Act will be approved by the Industrial Commission." N.C. Industrial Commission, *Workers' Compensation Rules of the North Carolina Industrial Commission*, Rule 501(4) (1993). Defendants contend that "compromise agreements are a final adjudication of an employee's rights while compensation agreements leave the door open for future medical expenses and further payment of benefits following a change of condition," that the "vast difference" between compensation and compromise agreements rationalizes such a distinction. We disagree.

"While 'the construction of statutes adopted by those who execute and administer them is evidence of what they mean,' *Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 76, 241 S.E.2d 324, 329 (1978), that interpretation is not binding on the courts." *Ferrell v. Dept. of Transportation*, 334 N.C. 650, 661, 435 S.E.2d 309, 317 (1993). The legislature has not made any such distinction between compensation and compromise agreements; section 97-17 refers to "settlements" and "settlement agreement[s]," and section 97-82 refers to "an agreement in regard to compensation under this Article." N.C.G.S. §§ 97-17, -82. Further, such agreements, compensation or compromise, as approved by the Commission, "become[ ] an award enforceable by a court decree." *Biddex*, 237 N.C. at 663, 75 S.E.2d at 780; *see also, e.g., Pruitt v. Publishing Co.*, 289 N.C. 254, 258, 221 S.E.2d 355, 358 (1976) (Considering a Form 26 compensation agreement, the Court stated that "[t]he Commission's approval of settlement agreements is as conclusive as if made upon a determination of facts in an adversary proceeding."). Both compromise and compensation agreements finally determine the employee's rights, and if the agreements involve an election of remedies, as here, the employee, by selecting one over the other, will be foreclosing certain rights. We conclude, therefore, that our construction of the statute, although contrary to that of the Commission, both accords with the legislative intent and is the more reasonable one.

[3] In the present case, the medical report attached to the Form 26 compensation agreement stated that plaintiff sustained a fifteen percent permanent disability and that the physician did not think plaintiff could return to work; thus, plaintiff may have been entitled to permanent total disability benefits under section 97-29, as well as permanent partial disability benefits based on the fifteen percent rating under section 97-31. However, under section 97-29 plaintiff would receive such benefits for as long as he remained totally disabled rather than the forty-five weeks provided for in the Form 26 compensation agreement under section 97-31. The claims department employee only checked the rating listed on the form against the medical report attached thereto, verified the payment information, and approved the agreement. That employee also stated at the hearing that "even [though] the doctor's rating also said that the claimant would probably not be able to return to work, . . . we still approve [an agreement for permanent partial disability benefits under section 97-31] if it matches the information in the file." She apparently assumed, rather than determined, that plaintiff was knowledgeable about workers' compensation benefits, and, particularly, his right to claim permanent total disability compensation under section 97-29 rather than permanent partial disability compensation under section 97-31. Thus, in approving the Form 26 compensation agreement between plaintiff and defendants, the Commission did not, as the statute requires, act in a judicial capacity to determine the fairness of the agreement.

Although the Commission entered no findings regarding plaintiff's capacity to work, *see, e.g., Little v. Food Service*, 295 N.C. 527, 533, 246 S.E.2d 743, 747 (1978) ("[T]he criterion for compensation in cases covered by [sections] 97-29 or -30 is the extent of the claimant's 'incapacity for work.' "), the full and complete medical report attached to the Form 26 compensation agreement between plaintiff and defendants was sufficient evidence upon which the Commission could have based a conclusion that the agreement was not fair and just and in accord with the intent and purpose of the Act. Accordingly, we reverse the decision of the Court of Appeals, and remand to that court for further remand to the Industrial Commission for a full investigation and a determination as to whether the Form 26 compensation agreement between plaintiff and defendants is fair and just and in accord with the intent and purpose of the Act, considering plaintiff's entitlement to benefits under N.C.G.S. § 97-29. *See Gupton*, 320 N.C. at 43, 357 S.E.2d at 678

**VERNON v. STEVEN L. MABE BUILDERS**

[336 N.C. 425 (1994)]

("A proceeding determined under a misapprehension of the applicable principles of law must be remanded to the Commission for consideration and adjudication of all the employee's compensable injuries and disabilities.").

### III.

As to the additional issue of whether competent evidence exists in the record to support the Commission's finding that the Form 26 compensation agreement was not entered into by reason of misrepresentation or mutual mistake, we conclude that the petition for discretionary review was improvidently allowed.

### IV.

In summary, as to the issue on direct appeal based on the dissenting opinion of Wynn, J., we hold that the Court of Appeals erred in affirming the Industrial Commission. As to the additional issue, we conclude the petition for discretionary review was improvidently allowed. Accordingly, we reverse the decision of the Court of Appeals and remand the case to the Court of Appeals with instructions to remand to the Industrial Commission for a full investigation and a determination as to whether the Form 26 compensation agreement between plaintiff and defendants is fair and just and in accord with the intent and purpose of the Act, considering plaintiff's entitlement to benefits under N.C.G.S. § 97-29.

REVERSED IN PART, AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

Justice MEYER dissenting.

I agree with the majority with regard to the Court of Appeals' assertion that "there is no requirement—either in the Workers' Compensation Act, The Rules of the Industrial Commission, or in case law—that the Commission, in approving a Form 26 agreement, determine that the agreement is fair." *Vernon v. Steven L. Mabe Builders*, 110 N.C. App. 552, 559, 430 S.E.2d 676, 680 (1993). Implicit in the Workers' Compensation Act is the requirement of fairness to both employer and employee. In addition, as the majority has noted, our prior decisions have indicated that the Commission does have an obligation to ensure the fairness of voluntary settlements.

I wish to point out, however, that in the limited context of a Form 26 settlement agreement, and presumably a Form 21 settlement agreement, the Commission fulfills its requirement to determine the fairness of the agreement if, on the face of the document, the settlement affords compensation in the manner prescribed by N.C.G.S. § 97-31 or 97-29 and otherwise complies with pertinent provisions of the Act. In making such a determination, the Commission is free to establish its own rules for the review of such form settlement agreements, which it has done. *See* Workers' Compensation Rules of the N.C. Industrial Commission, Rule 501, Annotated Rules of North Carolina (Michie 1994) [hereinafter "Workers' Compensation Rules"]. In essence, the Commission thereby properly abides by a legislative determination of what is a fair settlement in compensation for the injuries sustained by the employee.

Further, despite the fact that the Commission has adopted differing rules for the approval of form settlement agreements and compromise settlement agreements, I do not believe that the Commission views itself as without responsibility to ensure the fairness of all voluntary settlement agreements. It is my view that if the Commission adopts and follows rules designed to ensure that voluntary settlement agreements are in accordance with the provisions of the Workers' Compensation Act, it has fulfilled its obligation to ensure a fair settlement.

N.C.G.S. § 97-17 specifically states that "[n]othing herein contained shall be construed so as to prevent settlements made by and between the employee and employer *so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of this Article*." N.C.G.S. § 97-17 (1991) (emphasis added). Commission Rule 501(4) states that "[a]greements in proper form and conforming to the provisions of the Act will be approved by the Industrial Commission." Workers' Compensation Rules, Rule 501(4).

Form 26 agreements are designed to secure benefits calculated by the legislature to be fair and just compensation for the injury sustained by the employee. These benefits are mainly enumerated in N.C.G.S. § 97-31, entitled "Schedule of Injuries; Rate and Period of Compensation," and in N.C.G.S. § 97-29, entitled "Compensation Rates for Total Disability." Presumably, when the General Assembly determined the specific rates of compensation that would be forthcoming in the event of an enumerated injury, it made the deter-

mination that such compensation was fair. Thus, if the Commission abides by a rule that requires a voluntary settlement to conform to the provisions of the Act, it has met its obligation to ensure the fairness of the settlement. In the present case, the record indicates that the claims supervisor properly engaged in such a determination, although apparently unaware of our decision in *Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 348 S.E.2d 336 (1986).

In its order, the Commission made the following findings of fact:

When the Form 26 Agreement was submitted to the Commission for approval, Sandra McLamb of the claims department reviewed it to ascertain whether it was supported by the medical information in the file. The report by Dr. Kelly confirmed the permanent partial disability rating, and the payment information was correct, so she approved the agreement. Although she was not aware of changes in the law effected by the Supreme Court in Whitley v. Columbia Lumber Manufacturing Company, 318 N.C. 89[ ] (1986), it was the Industrial Commission's policy to not substitute its judgment for the parties or act as an advocate for either side as long as the information in the file supported the settlement agreement. Plaintiff was free to make an election of remedies, and the Commission would approve the resulting settlement as long as there was supporting documentation and the settlement complied with the law.

It is my view that the procedures followed by the Commission in this case were sufficient to meet the Commission's obligation to ensure a fair settlement.

The fact that the employee in this case may have been eligible for a more favorable settlement does not make the settlement he chose unfair. Nor does it constitute an agency decision rendered under a misapprehension of existing law. Even if the claims supervisor had been aware of our decision in *Whitley*, as long as the remedy elected by the claimant is consistent with the schedule of benefits, period of payment, and other provisions of the Act, approval of the agreement does not constitute a misapprehension of existing law.

It is likely that, due to the ongoing interpretation of the Workers' Compensation Act, similar situations will arise in the future. It is unrealistic to expect that Commission employees whose job it

FORSYTH MEMORIAL HOSPITAL v. ARMSTRONG WORLD INDUSTRIES

[336 N.C. 438 (1994)]

is to approve such settlements can stay abreast of all developments in workers' compensation law as soon as these developments occur. It is equally unrealistic to expect the few Commission employees whose job it is to approve form settlements to become advocates and render advice as to fairness in the many thousands of such form settlements that are submitted each year. As a result of this decision, it may be that, in order to assure compliance with the majority's requirement, the Commission will find it necessary to require that claimants be represented by counsel before they approve form settlement agreements. This, in my view, conflicts with the policies and intent of the Workers' Compensation Act.