The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff was an employee of defendant-employer on or about July 31, 1993.
3. Plaintiff sustained an injury by accident arising out of and in the course of her employment on July 31, 1993, when she injured her back.
4. Plaintiff received temporary total disability benefits from August 1, 1993 through January 3, 1994.
 ***********
Based on the competent evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed with defendant-employer on July 31, 1993 as a registered nurse. On that date, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant when she injured her back while assisting a patient. In connection with this accident, a Form 21 Agreement for Compensation for Disability agreeing to pay workers' compensation disability benefits "for necessary weeks" was approved by the Industrial Commission on September 29, 1993.
2. Plaintiff became a licensed registered nurse in 1974 and has worked since then as a nurse. She had previously worked at Grace Hospital from 1974 to 1975. She returned to Grace Hospital in February of 1983 to work as a floor nurse.
3. Plaintiff came under the care of Dr. P. E. Brown, an orthopedic surgeon in Hickory, following her injury. Plaintiff's past medical history was significant for prior back problems in 1974 and 1983.
4. Dr. Brown eventually recommended that plaintiff undergo surgery for her symptoms. Dr. Brown performed a laminectomy and diskectomy at L5-S1 on September 23, 1993.
5. Plaintiff returned to work for defendant January 3, 1994. Plaintiff continued to work for defendant on a regular basis earning the same or greater average weekly wage. In order to function at work plaintiff wore a back brace and took prescribed medication for muscle spasms, inflammation and pain. Plaintiff tried to space the medicine to avoid as much as possible side effects such as drowsiness and loss of concentration and alertness. Plaintiff's supervisor was aware of the medication she was taking. Plaintiff underwent additional physical therapy for pain and spasms in July and August of 1994. Plaintiff lost a significant amount of disk material between the L5-S1 vertebrae and because the remainder of the disk material continued to deteriorate after surgery, plaintiff had very little cushion between the two vertebrae and suffered mechanical aggravation resulting in pain and spasms. Plaintiff's return to work was unsuccessful and plaintiff returned to Dr. Brown in January 1995.
6. Plaintiff saw Dr. Brown for back pain and spasms on January 25, 1995. Plaintiff was given a lumbar support, advised to attend physical therapy, use mild analgesic muscle relaxant medication, and written out of work from January 25 through January 31, 1995. A February 3, 1995 letter to the carrier states that plaintiff has not reached maximum medical improvement and has been advised to start physical therapy. A February 20, 1995 note indicates plaintiff doing better, but still has a lot of aching pain in the low back. Plaintiff was given an injection in the lumbosacral junction, which Dr. Brown testified would give her temporary relief but not provide a cure.
7. On March 17, 1995, Dr. Brown saw plaintiff and noted that she was doing better and should continue her with the therapy and walking. An addendum to the March 17, 1995 office note stated plaintiff had reached MMI and retained a 10% permanent partial impairment to the back. Dr. Brown testified on November 25, 1997 that the addendum was done pursuant to "a request in relation to a workmens' comp. claim." Dr. Brown was asked if, in light of subsequent events, plaintiff had reached MMI on March 17, 1995. Dr. Brown stated, "Probably not. I would certainly interpret that to mean that I did not feel like she was going to improve from where she was at that point. However, her subsequent course obviously showed additional deterioration and worsening of her condition."
8. Dr. Brown testified that he wrote a note on May 1, 1995 "to verify that plaintiff was still having trouble with her back and was in need of continued treatment, specifically therapy-type modalities to control her pain and spasm."
9. Dr. Brown saw plaintiff September 6, 1995 for a "flare-up of pain in the low back with some spasm." Plaintiff was given trigger point injections and was told to continue with her physical therapy modalities as previously prescribed. As plaintiff's pain progressed she was prescribed additional medication in order to function at work. By October of 1995, plaintiff was taking a muscle relaxant that diminished her alertness and caused drowsiness, a pain reducing medication which caused a feeling of euphoria and an anti-inflammatory medication.
10. Plaintiff was going to resign in November 1995 because she had failed to notice that a nurse on the shift before her had set an IV bag infusing at 150cc per hour rather than at 40cc per hour. Plaintiff was concerned about her ability to care for patients because of difficulties she was having with concentration and alertness due to the increasing back pain and medications she was taking. Dr. Brown testified that plaintiff's medications were known to cause headaches, somnolence, anxiety, confusion, coordination disturbance, and drowsiness. Because of the side effects of the medications and concern with being able to do her job effectively, plaintiff was going to tender her resignation to defendant-employer on November 1, 1995, but was read a disciplinary action form and terminated before she could effectuate her resignation.
11. Plaintiff returned to Dr. Brown January 11, 1996 complaining of increasing pain in her lower back. Dr. Brown reviewed her x-rays and recommended a myelogram and CT scan. The MRI and CAT scan showed recurrent herniation of the disk at L5-S1 on the right and retrolisthesis of L5-S1 with widening of the facet joints. Dr. Brown opined that the recurrent disc herniation occurred at the time of the September-October 1995 worsening of plaintiff's symptoms.
12. On or about October 11, 1995, the carrier prepared a Form 26 for ten percent permanent partial impairment based on the March 17, 1995 rating by Dr. Brown. The Form 26 was prepared to indicate that Dr. Brown had issued the rating on September 6, 1995 which was the date that plaintiff had seen him but was not a date on which he had rated her.
13. Plaintiff and defendant mistakenly believed that September 6, 1995 was the date on which she had been rated.
14. Plaintiff executed a Form 26 Agreement for the payment of her permanent partial disability on or about October 11, 1995. Defendant-employer employed plaintiff at that time earning the same or greater average weekly wage. After receiving the Form 26 back from plaintiff, the carrier signed and sent the form to the NCIC Claims Department together with the Form 25R received earlier from Dr. Brown. However, the carrier first altered the Form 25R by inserting the date "9-6-95" and sent the form to the Commission without noting that it had been altered. The forms were received at the Commission on October 27, 1995. The Industrial Commission subsequently approved the Form 26 Agreement on November 28, 1995.
15. In chart notes of January 11, 1996 and in work status reports of January 23, 1996 and February 6, 1996, Dr. Brown concluded that plaintiff was totally disabled, and had been disabled since November 1995 and could not return to work. Dr. Brown noted that plaintiff may need to consider a lumbosacral fusion and suggested a myelogram and CT scan to rule out other significant pathology.
16. Dr. Brown saw plaintiff on February 6, 1996. At that time, he advised plaintiff of her surgical options. Plaintiff's myelogram and CT scan are consistent with her current disc herniation at the L5-S1 level on the right with severe degenerative disc disease at that level. Plaintiff's pain has significantly increased over the last three to six months and plaintiff may have to consider a repeat diskectomy and possibly a lumbosacral fusion as well.
17. Dr. Brown testified in his deposition that plaintiff reached maximum medical improvement in January or February 1996 and he increased her permanent partial disability rating to 20 percent to the back. Dr. Brown saw plaintiff November 7, 1997 and noted plaintiff still has a lot of pain in her low back and weakness in the leg. Overall plaintiff is stable and gets along fairly well at limited activity level. Dr. Brown wrote plaintiff out of work from November 9, 1995 and has not authorized her return to work as of the date of the hearing before the Deputy Commissioner.
18. Defendants fired plaintiff on November 1, 1995. Plaintiff subsequently submitted a resignation letter dated November 1, 1995. From the date of the firing and up until the date of the hearing before the Deputy Commissioner, plaintiff did not look for or attempt to find any employment. Defendants stopped rehabilitation efforts after November 1, 1995 and as such, plaintiff has not returned to work at the same or greater wages than her job with defendant. Plaintiff was written out of work by Dr. Brown on November 9, 1995 and has not returned to any employment since that time.
19. Plaintiff retains a 20 percent permanent partial disability to her back as a result of her surgery.
20. The Form 26 for ten percent PPI was approved by the Industrial Commission at a time when there was a four-to six-week backlog in approving agreements, and the claims examiners did not request or review documentation to support the forms submitted by the carrier. The Commission relied on the accuracy of the forms as submitted.
21. If the Industrial Commission claims examiner had some indication that there had been a worsening of condition as of the rating date given, she would have sent the form back to the carrier. However, this Form 26 as submitted gave no such indication because the chart note for September 6, 1995 was not submitted. Plaintiff has not been paid compensation pursuant to the approved Form 26.
22. The misstatement of the date of rating was material, inasmuch as September 6, 1995 was a date on which plaintiff's condition was much worse than it had been on March 17, 1995.
23. The Form 26 approved November 28, 1995 should be set aside, as either the carrier intended to insert an erroneous date in the 25R and the Form 26, or the carrier and the claimant were mistaken as to the date of rating and consequently as to the medical condition which had been rated. In addition, the Form 26 was not accompanied by the complete medical records as required.
24. Plaintiff's compensation rate is $202.01.
25. The firing of plaintiff and plaintiff's subsequent attempt to resign were directly related to her compensable injury. The mistake leading to her firing was due to plaintiff's lack of concentration and alertness brought about by the medication she was taking as a result of her compensable injury.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on July 31, 1993. N.C. Gen. Stat. § 97-29(6).
2. Plaintiff is entitled to continuing temporary total disability compensation at the rate of $202.01 per week from November 9, 1995 until plaintiff returns to work at the same wages or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-31(23).
3. Plaintiff is entitled to have the defendant pay for medical expenses and rehabilitation services incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §97-25.
4. For the weeks in which plaintiff was paid temporary total disability at $170.04 per week, plaintiff is entitled to payment of the difference between the temporary total disability paid at $170.04 per week and the compensation rate of $202.01 per week.
5. Plaintiff is entitled to temporary total disability at the rate of $202.01 per week for the second period of disability when plaintiff was written out of work from January 24, 1995 through February 1, 1995 for physiotherapy.
6. In this case, the Commission did not fulfill its requirement to do a full investigation and a determination that a Form 26 compensation agreement is fair in order to assure that the settlement is in accordance with the intent and purpose of the Act that an injured employer receive the disability benefits to which he is entitled. And incomplete medical records were submitted to the Industrial Commission when the Form 26 review was undertaken. Therefore the Form 26 in this matter must be set aside. N.C. Gen. Stat. § 97-17; Vernon v. Steven L. Mabe Builders,336 N.C. 425 (1994), Lewis v. Craven Regional Medical Center,134 N.C. App. 438, ___ S.E.2d ___ (1999).
6. Additionally, the Form 26 in this matter must be set aside due to the mutual mistake of the parties. N.C. Gen. Stat. § 97-17.
 ***********
Based on the foregoing, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation at the rate of $202.01 per week for the period of time plaintiff was out of work for further medical treatment which is January 24, 1995 through February 1, 1995. Defendant shall pay plaintiff for the difference between the temporary total disability paid at $170.04 per week and the compensation rate of $202.01 per week during plaintiff's initial period of disability. These sums are due and payable to plaintiff and shall be paid in a lump sum subject to the attorney fee set out below.
2. Defendant shall pay plaintiff continuing temporary total disability compensation at the rate of $202.01 per week from November 9, 1995 until plaintiff returns to work at the same wages or until further order of the Industrial Commission, subject to the attorney fee set out below.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 and 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel. Thereafter, every fourth check shall be paid directly plaintiff's attorney.
4. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Defendants shall pay plaintiff's medical treatment that is reasonably calculated to affect a cure, give relief or lessen the period of disability.
6. The approval of the Form 26 in this matter by a claims examiner for the North Carolina Industrial Commission is hereby vacated.
7. Defendants shall pay the costs.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER