***********
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence affirms the Opinion and Award of the deputy commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On January 4, 1999, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between Plaintiff and Defendant-Employer.
3. Defendant-Employer was self-insured.
4. Plaintiff's average weekly wage was $428.80.
5. Plaintiff sustained admittedly compensable injuries by accident, the last of which occurred on January 4, 1999.
6. Documents were stipulated into evidence, including certified Industrial Commission files and forms, a retirement application, and a copy of a check from Compensation Claims Solutions to Plaintiff in the amount of $40,000.00, including Plaintiff's endorsement thereof.
 ***********
Based upon all of the competent evidence in the record and the reasonable inferences that may be made thereon, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, the Plaintiff was 62 years old with a 4th grade education. He worked as a "machine operator" for the Defendant-Employer, with job duties including cleaning, sweeping, weed eating, and mowing grass. He usually worked 40 hours per week.
2. Plaintiff last worked full duty as a Water/Sewer Plant Worker II or "machine operator" on July 1, 1998.
3. Plaintiff underwent heart surgery in 1998 and returned to work with Defendant-Employer. Upon his return to work, the Defendant-Employer offered Plaintiff an administrative job, mainly consisting of answering the telephone in his department and doing other things to help out.
4. Plaintiff sustained separate admittedly compensable injuries by accident involving his back. Each time the plaintiff suffered an exacerbation of his back injury, he returned to work for the Defendant-Employer.
5. The last injury by accident sustained by Plaintiff was January 4, 1999. Upon his return to work, the Plaintiff was transferred to the water filtration plant to answer phones on June 17, 1999. This transfer was done to replace an employee who had quit.
6. Plaintiff was very uncomfortable with his position of answering the phones at the filtration plant. Because of his limited education, he was embarrassed when he could not pronounce or spell the names of persons leaving a message. Due to his unhappiness with this position, Plaintiff began investigating the possibility of an early retirement. In the meantime, Plaintiff continued to perform his job duties.
7. Ms. Rebecca Bruner, Registered Nurse and workers' compensation manager for the Defendant-Employer, assisted Plaintiff with his worker's compensation claims and his quest to receive other benefits, including retirement and social security. Ms. Bruner attended doctor's appointments with the Plaintiff and he came to rely upon her and trust her judgment. In fact, Plaintiff testified at the hearing that he "loved her", "trusted her", and "believed everything she said."
8. In association with resolving Plaintiff's workers' compensation claim, Ms. Bruner arranged for Plaintiff to have a meeting with Mr. Larry Justice, a representative from Defendant-Employer's third party administrator, to discuss settlement options. Plaintiff was initially offered $35,000.00 by Defendant-Employer's third-party administrator to settle the workers' compensation claims. Plaintiff demanded $40,000.00 to settle the case, and Defendants agreed to settle for that sum.
9. Plaintiff and Defendants entered into an Agreement for Final Compromise Settlement and Release (the "Clincher") on July 26, 1999. Plaintiff was not represented by legal counsel. Plaintiff testified at the hearing that he thought the Defendants were "doing him right." Before signing the Clincher, the Plaintiff allowed his wife to review the documents. Plaintiff testified that neither she nor he really understood the terms, but that he (Plaintiff) was sure that Ms. Bruner would look out for his interests.
10. Plaintiff testified that he is not able to read very well; however, Plaintiff was able to read, notice, and point out an error in the original draft of the Clincher Agreement. Further, Dr. Weller, an orthopedic surgeon and one of Plaintiff's long-time treating physicians, testified that Plaintiff always understood what he was saying about his condition and the treatment being offered.
11. Deputy Commissioner Roland Rowell approved the Clincher Agreement on August 30, 1999 after a very thorough review of all of the medical records and other materials submitted that accompanied the Clincher Agreement. Deputy Commissioner Rowell testified that the Agreement complied in all respects with Industrial Commission Rule 502 and that he felt that the Agreement was fair to Employee-Plaintiff. Deputy Commissioner Rowell specifically noted that the Agreement was fair to Plaintiff in that he was settling the cases for $40,000.00 when the due permanent partial disability rating would pay only $6,860.00. Deputy Commissioner Rowell further testified that he noted that the Plaintiff had other, non-workers' compensation conditions such as a heart condition.
12. At the time Plaintiff entered into the Clincher agreement, he was working for the Defendant-Employer at the same or greater wages as prior to his last compensable injury by accident of January 4, 1999. Plaintiff was able to perform his job, however, he was not pleased with the job duties. Plaintiff continued to do the job of answering the phone until his retirement from Defendant-Employer on August 31, 1999.
13. Upon receipt of his $40,000.00 award from the Clincher, Plaintiff bought a car, underpinned his mobile home, bought a car shed, paid off some bills and spent the remainder. Plaintiff exhausted the funds from the Clincher prior to the time he was eligible to receive social security benefits. The Clincher contained no social security offset language.
14. Dr. Weller testified that Plaintiff's back was in a degenerative condition and that it would be hard to relate that condition to anything in particular, or to offer a permanent partial disability rating.
15. When Plaintiff becomes eligible to receive social security disability, the amount is estimated to be $900.00 per month. Plaintiff currently receives $720.00 per month in State Disability Retirement benefits.
16. There has been no showing of fraud, misrepresentation, undue influence or mutual mistake associated with Plaintiff's entering into the Clincher agreement with Defendant-Employer.
 ***********
The forgoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. A Compromise Settlement Agreement cannot be set aside absent a showing of error due to fraud, misrepresentation, undue influence or mutual mistake. N.C. Gen. Stat. § 97-17. Plaintiff bases his request to set aside the Compromise Settlement Agreement on his contention that the Defendant-Employer or its agents committed fraud on the Industrial Commission by erroneously leading the Industrial Commission to believe that Plaintiff had successfully returned to work and would continue to work for Defendant-Employer indefinitely. There is no evidence in the record to support such a contention.
2. Fraud is defined in N.C. Gen Stat. § 97-88.2 as when "any person who willfully makes a false statement or representation of a material fact for the purpose of obtaining or denying any benefits or payment[.]" There is no evidence in the record to support a finding of fraud on the part of Defendants.
3. When a Compromise Settlement Agreement is submitted for review and approval to the Industrial Commission, the Commission has an obligation to act in a judicial capacity and thereby to undertake a full investigation to determine that the terms of the settlement agreement are fair and just to Plaintiff. Vernon v.Steven L. Mabe Builders, 336 N.C. 425, 444 S.E.2d 191 (1994). In this particular case, then Special Deputy Commissioner, now Deputy Commissioner, Roland Rowell, acted in a judicial capacity and made a full investigation in reviewing the Agreement submitted by the parties and determined that it was fair. The Full Commission also determines that the Agreement was fair.
4. Plaintiff is not entitled to a setting aside of the Compromise Settlement Agreement, nor is he entitled to any further workers' compensation benefits.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
For the reasons set forth herein, Plaintiff's claim to set aside the Compromise Settlement Agreement approved by the Industrial Commission on August 30, 1999 in this case is HEREBY DENIED.
This the ___ day of June 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________ THOMAS BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG VICE-CHAIR