* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Griffin. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant, on August 6, 2001.
3. Defendant was insured by Liberty Mutual Insurance Company during all times relevant to this claim.
4. Plaintiff was employed as a truck driver for defendant.
5. Plaintiff's average weekly wage during all times relevant to this claim was $838.53, yielding a compensation rate of $559.05 per week.
6. This claim was settled by Compromise Settlement Agreement dated November 1, 2004, and an Addendum to Compromise Settlement Agreement dated November 30, 2004, with plaintiff not represented by counsel.
7. The Compromise Settlement Agreement and Addendum were approved on December 8, 2004 by Special Deputy Commissioner Elizabeth M. "Lacy" Maddox.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was fifty (50) years of age with a high school diploma. Prior to his employment with defendant, plaintiff worked in the farming industry and as a truck driver.
2. On August 6, 2001, while working as a truck driver for defendant, plaintiff slipped off a ladder and sustained an injury to his back. Defendants accepted liability for plaintiff's injury and began paying indemnity and related medical expenses.
3. Plaintiff received medical treatment, including spinal fusion surgery performed on October 31, 2001. Based on a Functional Capacity Evaluation (FCE) performed on October 22, 2002, plaintiff was capable of performing light duty work with permanent restrictions of maximum occasional lifting of twenty (20) pounds and maximum frequent lifting of ten (10) pounds.
4. On December 13, 2002, Dr. Harlan B. Daubert released plaintiff to return to work within the restrictions identified by the FCE. At this time, Dr. Daubert conveyed to plaintiff the possibility for hardware removal. The potential risks and benefits of this procedure were discussed with plaintiff, who decided to consider the procedure further.
5. On September 9, 2003, Dr. Daubert released plaintiff at maximum medical improvement and assigned a 25% permanent partial disability rating to the back. Again, Dr. Daubert recommended consideration for hardware removal and noted plaintiff should follow-up on an as needed basis. Previously, plaintiff was assigned a 15% permanent partial disability rating to the back for which he received payment. As a result of his August 6, 2001 back injury, plaintiff is entitled to an additional 10% permanent partial disability rating to the back.
6. Defendant was unable to hold plaintiff's truck driving position and plaintiff was terminated as an employee. Defendants continued to pay temporary total disability compensation while plaintiff remained out of work due to his compensable back injury until an Order was filed approving a Compromise Settlement Agreement on December 8, 2004.
7. In August 2004, defendants discussed with plaintiff the possibility of beginning vocational rehabilitation or the possibility of resolving the claim by a Compromise Settlement Agreement. A new adjuster was assigned to the case after the initial settlement discussions. Plaintiff testified that he searched the Industrial Commission website to determine his workers' compensation benefits. Plaintiff elected to clincher his claim with defendants and made a demand to compromise for $63,000.00. The claim was eventually resolved for $60,000.00, with temporary total disability compensation payments continuing until receipt of an order from the Industrial Commission approving the Agreement.
8. In accordance with the settlement, a Compromise Settlement Agreement was prepared and submitted to plaintiff for review and for his signature. Plaintiff signed the Agreement and his signature was notarized. The executed Agreement was forwarded to the Industrial Commission for approval.
9. After reviewing the Compromise Settlement Agreement, Special Deputy Commissioner Elizabeth "Lacy" Maddox requested additional information from the parties. On November 18, 2004, Special Deputy Commissioner Maddox faxed a letter to the parties seeking clarification on the permanent partial disability rating, the inclusion of Social Security Disability offset language in the Agreement, and documentation of any vocational rehabilitation efforts or a description of plaintiff's educational and work history.
10. In response to Special Deputy Commissioner Maddox's letter, defense counsel reported there were no vocational rehabilitation records because plaintiff elected to settle his claim. The issue concerning the permanent partial disability rating was explained and defense counsel indicated that the Social Security Disability offset addendum would be forwarded to the Industrial Commission with plaintiff's signature. Additionally, defense counsel reported plaintiff was a 1973 high school graduate with a work history in the farming and truck driving industries.
11. A notarized copy of the Addendum to Compromise Settlement Agreement with plaintiff's signature was forwarded to the Industrial Commission. At that time, the Agreement included all the terms and documentation as required by Industrial Commission Rule 502. After a careful review of the Agreement with the Addendum and attached documentation and a review of the Industrial Commission file, Special Deputy Commissioner Maddox deemed the Agreement to be fair and just and in the best interests of all parties. An Order approving the Agreement was filed on December 8, 2004.
12. After receipt of the Order approving the Agreement, defendants forwarded to plaintiff a check for the settlement, which was cashed by plaintiff. Subsequently, plaintiff sought legal assistance for his Social Security Disability appeal. After discussing his workers' compensation claim with legal counsel, plaintiff decided that he did not want to accept the settlement for his compensable back injury. Plaintiff contends that during negotiations for settlement, he believed that he was only entitled to a total of 300 weeks of benefits whether he returned to work or not. There is no credible evidence that the adjuster provided inaccurate information to plaintiff to induce the settlement of his claim.
13. Plaintiff sustained an earlier injury to his back with another employer, which required back surgery. A 15% permanent partial disability rating was assigned to plaintiff's back. Plaintiff, prose, negotiated a settlement with the carrier for this previous injury.
14. At the time that plaintiff entered into the Agreement, he was fully aware that his treating physician recommended the possibility of hardware replacement surgery in the future. In fact, plaintiff appeared reluctant to undergo the hardware surgery after assessing the potential risks and benefits. Additionally, plaintiff was aware that he had not returned to work and that he had permanent work restrictions. During settlement negotiations, plaintiff did not seek legal advice or representation. After consideration of his options, plaintiff elected to settle his claim for $60,000.00. Plaintiff acknowledged that he read the terms of the Agreement and willfully signed the Agreement.
15. The Agreement was submitted to the Industrial Commission and reviewed by Special Deputy Commissioner Maddox. After an initial review, Deputy Commissioner Maddox requested additional information and clarification from both parties. Specifically, Special Deputy Commissioner Maddox inquired about plaintiff's vocational rehabilitation efforts and work and educational history in light of the fact that he was released to return to work with permanent restrictions. Plaintiff provided defense counsel with his relevant educational and work history and signed the Addendum to the Agreement concerning Social Security Disability. At no time during the information exchange process did plaintiff contact Special Deputy Commissioner Maddox to express any concerns about his rights under the Act.
16. Having reviewed the medical evidence filed with the Agreement at the time it was originally submitted to the Industrial Commission and the additional medical evidence before the undersigned, the Agreement was fair and just at the time it was approved on December 8, 2004.
17. There is no evidence of any fraud, duress or misrepresentation relating to the settlement of this matter. Plaintiff of his own free will entered into an Agreement to settle his workers' compensation claim and accepted payment for the same.
18. Plaintiff's prosecution of this claim was not unreasonable.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. At the time of its approval, the Compromise Settlement Agreement with Addendum and attached documentation included all terms and supporting documentation as required by North Carolina Industrial Commission Rule 502. Specifically, defendants submitted information regarding plaintiff's educational and work history as requested by Special Deputy Commissioner Maddox to comply with North Carolina Industrial Commission Rule 502 (2)(h).
2. Plaintiff willfully entered into an Agreement with defendants in which he would receive $60,000.00 in settlement of his worker's compensation claim and accepted payment for the same. The settlement entered into by plaintiff with defendants was not the result of fraud, misrepresentation, undue influence or mutual mistake. N.C. Gen. Stat. § 97-17.
3. When a Compromise Settlement Agreement is submitted for review and approval to the Industrial Commission, the Commission has an obligation to act in a judicial capacity and thereby to undertake a full investigation to determine that the terms of the settlement agreement are fair and just to the injured employee. Vernon v. Steven L. MabeBuilders, 336 N.C. 425, 433, 444 S.E.2d 191, 195 (1994). In this particular case, Special Deputy Commissioner Maddox acted in a judicial capacity and made a full investigation in reviewing the Agreement submitted by the parties and determined that it was fair and just. The Full Commission also determined that the Agreement was fair and just.
4. Having reviewed the medical evidence filed with the Agreement at the time it was originally submitted to the Commission and the additional medical evidence submitted before the deputy commissioner, the Agreement was fair and just at the time it was approved on December 8, 2004. N.C. Gen. Stat. § 97-17; N.C.I.C. Rule 502.
5. Plaintiff is not entitled to set aside the Compromise Settlement Agreement, nor is he entitled to any further workers' compensation benefits.
6. As plaintiff's prosecution of this claim was not unreasonable, defendants are not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 ORDER
1. For the reasons set forth herein, plaintiff's claim to set aside the Compromise Settlement Agreement approved by the Industrial Commission on December 8, 2004 in this case is HEREBY DENIED.
2. Defendants' motion for attorney's fees is HEREBY DENIED.
3. Each side shall bear its own costs.
This the 20th day of November, 2006.
 S/___________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ PAMELA T. YOUNG COMMISSIONER