* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Stephenson with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff sustained a compensable injury by accident on May 17, 1999.
5. An employment relationship existed between plaintiff and the defendant on May 17, 1999.
6. Plaintiff's average weekly wage is $250.00.
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On May 17, 1999, plaintiff was carrying strawberries to the produce walk-in when she slipped and fell during the course and scope of her employment. Defendants accepted her claim as compensable and began providing indemnity and medical compensation benefits to plaintiff.
2. Plaintiff received conservative medical treatment, including physical therapy, biofeedback and counseling. In March of 2001, plaintiff presented at Duke University for medical assessment with her authorized treating physician, Dr. Epling. At that time, Dr. Epling assessed that plaintiff reached maximum medical improvement ("MMI"), assigned a 5% permanent partial disability rating to her back, and released her to return to full time light duty work with no lifting over 15 pounds. *Page 3 
3. In June 2001, plaintiff attempted suicide with a drug overdose and was hospitalized. Thereafter, she stopped working for defendant. The medical records reveal that plaintiff has substance abuse issues along with psychological problems.
4. Thereafter, plaintiff continued to receive psychiatric treatment and also began to treat at Triangle Orthopaedic with Dr. Libelt. On September 26, 2006, Dr. Epling opined that plaintiff's physical condition had not changed since March 2001 and assessed that plaintiff did not need to undergo any type of surgical intervention. Plaintiff did not seek approval or attempt to gain authorization for medical treatment with Dr. Liebelt from defendant. In January 2003, plaintiff underwent an anterior cervical disketomy fusion at C5-6 with Dr. Libelt without complication.
5. Defendants denied plaintiff's unauthorized medical treatment based on the fact that her authorized treating physician, Dr. Epling, opined that plaintiff did not need to undergo any type of surgical intervention and due to the fact that there were MRI reports, dated January 23, 1993, that indicated that plaintiff had persistent neck pain, degenerative disk disease, disk height loss at C5-6 and a small posterior osteophyte at C5-6 on the left.
6. Plaintiff requested a hearing with the Industrial Commission to determine whether her current conditions and symptoms were related to her original compensable injury. The parties engaged in settlement negotiations but were unable to resolve the pending issues before the Industrial Commission. This claim was set on a Durham hearing docket before Deputy Commissioner Myra Griffin on November 28, 2006. At the hearing, the parties went out into the hallway and reached a settlement agreement prior to the hearing. The parties returned into the courtroom, approached the bench, and explained the terms of the settlement to Deputy *Page 4 
Commissioner Griffin. Deputy Commissioner Griffin instructed the parties to submit a compromise settlement agreement to her attention within the next 30 days.
7. Defense counsel drafted the compromise settlement agreement and set an appointment for plaintiff to come to the office and sign the agreement, since plaintiff indicated that she would feel more comfortable coming into the office to execute the agreement. Plaintiff was provided a copy of the clincher agreement to review prior to going to defense counsel's office to execute the agreement.
8. Plaintiff's daughter, Tonya Herron, testified that she was present at the hearing in Durham when the case was initially settled and that she was present with her mother at all times, and that defense counsel explained that plaintiff's neck condition would not be included in the compromise settlement agreement. Ms. Herron further testified that her mother was instructed to self-administer the Medicare Set-Aside proceeds.
9. On or about December 8, 2006, plaintiff presented at defense counsel's office. The parties reviewed the compromise settlement agreement in its entirety, made several amendments and additions, and executed the compromise settlement agreement.
10. Defense counsel testified that she went through the agreement with plaintiff and explained to plaintiff that her neck was denied as a part of the clincher agreement and that by signing the clincher agreement, she was waiving her rights under the North Carolina Workers' Compensation Act to collect additional benefits.
11. Plaintiff's daughter, Ms. Herron, brought a large bag of medical records when she presented to execute the clincher agreement and plaintiff referred to these medical reports during the execution of the clincher agreement. *Page 5 
12. On or about December 13, 2006, the parties submitted a fully executed clincher agreement to the North Carolina Industrial Commission for consideration and approval.
13. On December 14, 2006, Deputy Commissioner Myra Griffin executed and filed an Order approving the compromise settlement agreement. The settlement proceeds were disbursed by defendant-carrier and plaintiff endorsed and cashed the settlement check. None of the parties filed an appeal from Deputy Commissioner Griffin's Order approving the compromise settlement agreement.
14. Plaintiff testified that upon receipt of the $95,000.00 award from the clincher, plaintiff purchased household items, including a car and other household belongings, in addition to giving her daughter $10,000.00.
15. Plaintiff filed a Form 33 Request that Claim be Assigned for Hearing indicating that the compromise settlement agreement should be set aside as it did not accept her neck as a part of the clincher agreement. On or about March 1, 2007, defendants filed a Form 33R Response to Hearing Request contending that there was no basis to set aside the compromise settlement agreement. Defendants also filed a motion with Executive Secretary Weaver asking that the hearing be removed from the hearing docket since the claim had been settled pursuant to a compromise settlement agreement.
16. At the hearing, plaintiff testified that she recalled speaking with defense counsel in Durham, North Carolina and stepping outside of the courtroom to settle her claim. Plaintiff further testified that she recalled defense counsel explaining to her that her neck was not included in the settlement agreement and testified to the various discussions that the parties engaged in regarding the settlement agreement. Plaintiff further testified that she had not been coerced or forced to sign the settlement agreement by defendants. *Page 6 
17. Plaintiff and defendants entered into an Agreement for Final Compromise Settlement and Release ("clincher") on December 8, 2006. Plaintiff was not represented by legal counsel. Plaintiff testified at the hearing that she believed defendants had not intentionally misrepresented any facts to her prior to signing the clincher agreement. Before executing the clincher, plaintiff along with her daughter, reviewed the documents.
18. Attorney Erika Jones testified at the hearing that the parties had engaged in settlement negotiations and the fact that plaintiff's back claim was accepted and her neck claim had been denied pursuant to the medical records provided by Dr. Epling was fully explained to plaintiff. Attorney Jones further testified that it appeared that plaintiff seemed to be articulate and knowledgeable of her claim. Attorney Jones further testified that it appeared that plaintiff was signing the clincher agreement at her own will and instructed her to obtain an attorney or contact an Ombudsman at the Industrial Commission for any additional advice.
19. Plaintiff testified that the settlement was voluntary and that she had not been coerced into signing the settlement agreement.
20. The competent evidence of record in this case also indicated that plaintiff was mentally competent to enter into the clincher agreement and plaintiff did not produce evidence that she has been adjudicated incompetent to handle her affairs.
21. The competent evidence in this case also indicates that the clincher agreement was entered into by the parties in this case on or about December 8, 2006, and was not procured by fraud, misrepresentation, mutual mistake, or undue influence.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following: *Page 7 
 CONCLUSIONS OF LAW
1. A compromise settlement agreement cannot be set aside absent a showing of error due to fraud, misrepresentation, undue influence, or mutual mistake. N. C. Gen. Stat. § 97-17. Plaintiff has not alleged or produced any evidence to support her contention that defendants committed fraud or made any type of material misrepresentations when entering into the clincher agreement.
2. Fraud is defined in N.C. Gen. Stat. § 97-88.2 as when "any person who willfully makes a false statement or representation of material fact for the purpose of obtaining or denying any benefits or payment." There is no evidence in the record to support a finding of fraud on the part of the defendants.
3. The compromise settlement agreement was submitted for review and approval by the Industrial Commission. The Industrial Commission determined that the terms of the settlement agreement were fair and just to plaintiff. Vernon v. Steven L. Mabe Builders, 336 N.C. 425,444 SE2d 191 (1994). In this particular case, Deputy Commissioner Myra Griffin acted in the judicial capacity and made a full investigation in reviewing the agreement submitted by the parties and determined that it was fair. Therefore, plaintiff is not entitled to set aside the compromise settlement agreement nor is she entitled to any further workers' compensation benefits.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following: *Page 8 
 ORDER
1. For the reasons set forth herein, plaintiff's claim to set aside the compromise settlement agreement approved by the Industrial Commission on December 14, 2006, is hereby DENIED.
2. Each side shall bear its own costs.
This the 16th day of September 2008.
 S/_________________________
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
 S/_________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_________________________ PAMELA T. YOUNG CHAIR *Page 1