***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses, in part, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award. *Page 2 
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Plaintiff is M.C. Davis.
2. Defendant is Browning Ferris Industries, who is self-insured for workers' compensation claims with AIG Claims Services currently acting as the Third-Party Administrator.
3. On September 23, 1997, an employer-employee relationship existed between Defendant and Plaintiff; Defendant regularly employed three (3) or more employees; and all parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On April 16, 1999, an employer-employee relationship existed between Defendant and Plaintiff; Defendant regularly employed three (3) or more employees; and all parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
6. Plaintiff's claim in I.C. No. 924831 is for an occupational disease to his right knee arising out of and in the course of his employment with Defendant that occurred on September 23, 1997, the compensability of which Defendant admitted by way of a Form 21 Agreement approved by the Industrial Commission on June 7, 1999. *Page 3 
7. Plaintiff's claim in I.C. No. 953894 is for an occupational disease to his left knee arising out of and in the course of his employment with Defendant that occurred on April 16, 1999, the compensability of which Defendant admitted by way of a Form 21 Agreement approved by the Industrial Commission on December 7, 2001.
8. Plaintiff filed a Form 18M with the Commission in I.C. Nos. 924831 and 953894 on or about January 12, 2001. The Commission approved the Form 18M on May 15, 2001, and awarded future necessary medical compensation pursuant to N.C. Gen. Stat. § 97-25.1 and I.C. Rule 408.
9. The parties entered into a Form 26 Agreement in I.C. No. 924831 whereby Defendant agreed to pay and Plaintiff agreed to accept forty (40) weeks of permanent partial disability benefits based upon the twenty percent (20%) permanent partial impairment rating assigned to Plaintiff's right leg. This Agreement was executed by the parties and their respective counsel and was approved by the North Carolina Industrial Commission on September 27, 2001. Defendant has paid, and Plaintiff has received, all benefits pursuant to the terms of this Form 26 Agreement.
10. The parties entered into a Form 21 Agreement in I.C. No. 953894 whereby Defendant agreed to pay and Plaintiff agreed to accept forty (40) weeks of permanent partial disability benefits based upon the twenty percent (20%) permanent partial impairment rating assigned to Plaintiff's left leg. This Form Agreement was executed by the parties and their respective counsel and was approved by the Industrial Commission on December 7, 2001. Defendant has paid, and Plaintiff has received, all benefits pursuant to the provisions of this Form 21 Agreement. *Page 4 
11. Plaintiff filed a protective Form 18 in I.C. No. 924831 on or about July 15, 2003, in which he asserted a claim for additional rights and benefits pursuant to N.C. Gen. Stat. § 97-47.
12. Plaintiff filed a protective Form 18 in I.C. No. 953894 on or about July 15, 2003, in which he asserted a claim for additional rights and benefits pursuant to N.C. Gen. Stat. § 97-47.
13. Plaintiff filed a Form 18M in I.C. No. 924831 on or about March 2, 2004, and the Commission approved the Form 18M on May 4, 2004, and awarded future necessary medical compensation pursuant to N.C. Gen. Stat. § 97-25.1 and I.C. Rule 408.
14. Plaintiff filed a Form 18M in I.C. No. 953894 on or about March 2, 2004, and the Commission approved the Form 18M on May 4, 2004, and awarded future necessary medical compensation pursuant to N.C. Gen. Stat. § 97-25.1 and I.C. Rule 408.
15. By an Order filed on October 14, 2004, the Commission consolidated I.C. Nos. 924831 and 953894 for hearing.
16. Plaintiff's average weekly wage is $709.67, and said average weekly wage yields a compensation rate of $473.14.
 *********** EXHIBITS
At and subsequent to the hearing before the Deputy Commissioner, Plaintiff submitted the following exhibits:
 a. An Industrial Commission Form 21 Agreement for Compensation for Disability, which was approved on June 7, 1999, and which was admitted into the record and marked as Plaintiff's Exhibit (1); *Page 5 
 b. An Industrial Commission Form 18M dated January 10, 2001, which was admitted into the record and marked as Plaintiff's Exhibit (2);
 c. An Industrial Commission Form 26 Supplemental Agreement as to Payment of Compensation, which was approved on September 27, 2001, and which was admitted into the record and marked as Plaintiff's Exhibit (3);
 d. An Industrial Commission Form 21 Agreement for Compensation for Disability, which was approved on December 7, 2001, and which was admitted into the record and marked as Plaintiff's Exhibit (4);
 e. An Industrial Commission Form 18M dated July 15, 2003, for Plaintiff's left knee, which was admitted into the record and marked as Plaintiff's Exhibit (5);
 f. An Industrial Commission Form 18M dated July 15, 2003, for Plaintiff's right knee, which was admitted into the record and marked as Plaintiff's Exhibit (6); and,
 g. A packet of medical records from Dr. Matthew J. Germini, which is admitted into the record and marked as Plaintiff's Exhibit (7).
At the hearing before the Deputy Commissioner, Defendant submitted the following exhibits:
 a. An Industrial Commission Form 28B dated July 16, 2002, for Plaintiff's right knee, which was admitted into the record and marked as Defendant's Exhibit (1) and; *Page 6 
 b. An Industrial Commission Form 28B dated September 10, 2002, for Plaintiff's left knee, which was admitted into the record and marked as Defendant's Exhibit (2).
 *********** ISSUES
The issues before the Deputy Commissioner according to Plaintiff were:
 a. Should the Form 26 agreement in I.C. File No. 92483l approved by the Commission on September 27, 200l, be set aside for lack of the filing of a full and complete medical report as required by N.C. Gen. Stat. § 97-82(a) [the version in effect at the time] and per Atkins v. Kelly Springfield Tire, 154 N.C. App. 512, 571 S.E.2d 865 (2002)?
 b. Should the Form 21 agreement in I.C. File No. 953894 approved by the Commission on December 7, 200l, be set aside for lack of the filing of a full and complete medical report as required by N.C. Gen. Stat. § 97-82(a) [the version in effect at the time] and per Atkins v. Kelly Springfield Tire, 154 N.C. App. 512, 571 S.E.2d 865 (2002)?
 c. Has Plaintiff sustained a change of condition within the meaning of N.C. Gen. Stat. § 97-47
with regard to either or both of his injuries?
 d. Are the injuries, if any, sustained by Plaintiff as the result of a fall that Plaintiff maintains occurred on December 22, 2004, proximately related to either or both of his work-related injuries?
 e. To what additional benefits, if any, is Plaintiff entitled under the Workers' Compensation Act? *Page 7 
The issues before the Deputy Commissioner according to the Defendant are as follows:
 a. Is Plaintiff estopped or otherwise prevented from having the Form 26 Agreement in I.C. File No. 924831, approved by the North Carolina Industrial Commission on September 27, 2001, set aside for lack of the filing of a full and complete medical report?
 b. Is Plaintiff estopped or otherwise prevented from having the Form 21 Agreement in I.C. File No. 953894, approved by the North Carolina Industrial Commission on December 7, 2001, set aside for lack of the filing of a full and complete medical report?
 c. Has Plaintiff sustained a compensable change of condition within the meaning of N.C. Gen. Stat. § 97-47 with respect to either, or both, of his injuries set forth in I.C. File Nos. 924831 and 953894?
 d. Has Plaintiff received, or is Plaintiff currently receiving, all benefits to which he is entitled to pursuant to the provisions of the North Carolina Workers' Compensation Act as a result of his September 23, 1997, and April 16, 1999, occupational diseases?
 e. What, if any, additional benefits are Plaintiff entitled to receive pursuant to the provisions of the North Carolina Workers' Compensation Act?
 f. Was Plaintiff's alleged fall suffered on December 22, 2004, related to his occupational diseases of September 23, 1997, and/or April 16, 1999?
 g. What, if any, benefits are Plaintiff entitled to receive as a result of the alleged incident of December 22, 2004?
 *********** *Page 8 
Based upon the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was fifty-seven (57) years of age, with his date of birth being September 22, 1948. Plaintiff is a high school graduate, and later attended Forsyth Technical Community College where he earned certifications in graphic arts, plumbing, and heating and air conditioning. Additionally, Plaintiff served in the United States Air Force where he attended technical school.
2. Plaintiff began his employment with Defendant in 1978, when the business was operated under the name of Sanitary Container. Following a merger, Defendant became Allied Waste Industries. Defendant's name changed again to Browning Ferris Industries after Plaintiff's employment with the company ended. Upon first being hired, Plaintiff worked in the container shop cleaning cans. Later, Plaintiff was promoted to a compactor repairman position. At the hearing before the Deputy Commissioner, Plaintiff testified that the position of compactor repairman required a great deal of crawling, kneeling, squatting, and climbing to perform the required repairs.
3. Plaintiff testified that, during his employment with Defendant, his knees began swelling with the right being worse than the left initially. Eventually, Plaintiff's pain progressed to the point that he could no longer work. Thereafter, Plaintiff sought medical treatment at PrimeCare on September 12, 1997. The physician at Prime Care examined Plaintiff's right knee, took fluid from the knee to reduce swelling, and referred him to an orthopedist.
4. Upon this referral, Plaintiff began treating with Dr. Gregory Holthusen on July 8, 1998. Dr. Holthusen's notes from this initial examination reflect that Plaintiff reported pain and *Page 9 
swelling in his right knee which had bothered him for at least a year, and probably longer. Dr. Holthusen further noted that Plaintiff could not recall any specific injury, but that his job with Defendant had caused an increase in his symptoms. Following this examination, Dr. Holthusen diagnosed Plaintiff as having a probable tear of the medial meniscus in his right knee, as well as chondromalacia. Dr. Holthusen recommended arthroscopic surgery, which was performed on August 17, 1998.
5. Subsequent to this first surgery, Plaintiff returned to Dr. Holthusen on several occasions with his condition improving over time. On December 17, 1998, Dr. Holthusen opined that Plaintiff had reached maximum medical improvement and assigned a twenty percent (20%) permanent partial impairment rating to Plaintiff's right lower extremity. Dr. Holthusen's notes from this date reflect his opinion that Plaintiff would likely be unable to perform a job requiring climbing, squatting, or kneeling.
6. In 1998, Plaintiff retained an attorney to provide legal representation in his workers' compensation claim for his right knee, I.C. No. 924831. Eventually, the parties executed two separate form agreements in this claim. The first was an Industrial Commission Form 21 Agreement for Compensation for Disability, which was approved on June 7, 1999, and pursuant to which Defendant accepted the compensability of the right knee claim and agreed to pay temporary total disability compensation for "necessary weeks." The second was an Industrial Commission Form 26 Supplemental Agreement as to Payment of Compensation, which was approved on September 27, 2001, and pursuant to which Defendant agreed to pay Plaintiff permanent partial disability benefits for the twenty percent (20%) impairment rating to his right lower extremity. *Page 10 
7. On April 27, 1999, while his claim for the right knee was pending, Plaintiff returned to Dr. Holthusen and reported experiencing pain and swelling in his left knee. Dr. Holthusen's notes from that date reflect that Plaintiff's left knee condition was basically the same as Plaintiff's earlier right knee condition and was the result of prolonged kneeling and squatting performed in the course of his employment with Defendant. Following this examination, Dr. Holthusen recommended arthroscopic surgery for Plaintiff's left knee, and this procedure was performed on March 6, 2000.
8. Subsequent to this second surgery, Plaintiff returned to Dr. Holthusen on multiple occasions. Medical records from May 9, 2000, reflect Dr. Holthusen's opinion that Plaintiff could perform a job that did not require climbing or squatting. On July 11, 2000, Dr. Holthusen opined that Plaintiff had reached maximum medical improvement for the left knee and assigned him a twenty percent (20%) permanent partial impairment rating to the left knee. Medical records from July 11, 2000, indicate that Plaintiff discussed the possibility of returning to work, and that Dr. Holthusen encouraged him to seek a job that did not require squatting, climbing, or heavy lifting.
9. The parties submitted an Industrial Commission Form 21 Agreement for Compensation for Disability in I.C. No. 953894, which was approved on December 7, 2001, and pursuant to which Defendant agreed to pay Plaintiff permanent partial disability compensation for the twenty percent (20%) impairment rating to his left leg.
10. Subsequent to the submission to the Commission for approval of the Form 26 Agreement for permanent partial disability for the right knee and the Form 21 Agreement for permanent partial disability for the left knee, Plaintiff testified that his knee conditions worsened. Plaintiff returned to Dr. Holthusen on September 18, 2001 complaining of increased pain, *Page 11 
catching, and giving away in the right knee. Dr. Holthusen injected the knee with Marcaine, Xylocaine, and Kenalog, and also continued his prescription for Naproxen. On October 30, 2001, Dr. Holthusen noted that Plaintiff was having pain with weight bearing, that he had swelling in both knees when he is on his feet for any length of time, and that the right knee was worse than the left. He felt that Plaintiff might need another arthroscopic surgery on his right knee. He also noted that Plaintiff's bilateral knee symptoms would keep him from doing any strenuous work on his feet. On February 20, 2002, Dr. Holthusen noted that Plaintiff had a small cyst on his left knee and that Plaintiff was experiencing severe symptoms with his right knee. On October 1, 2003, Plaintiff reported to Dr. Holthusen that both knees were hurting more, the right more than the left, and that he was having dull, aching pain intermittently, rated 9 on a scale of 10. Plaintiff also reported "sharp pain occasionally with twisting, and catching, and giving way." Dr. Holthusen noted that both knee problems were related to Plaintiff's occupational diseases covered by workers' compensation, that Plaintiff was ready for arthroscopy surgery, and that they would try to get the surgery approved.
11. On February 12, 2004, a partner in Dr. Holthusen's medical practice noted that Plaintiff was experiencing difficulty in getting the right knee surgery that Dr. Holthusen had recommended. On March 2, 2004, Plaintiff filed a second Form 18M for additional medical compensation for each knee, and the Industrial Commission approved these forms on May 4, 2004. At the time of his August 4, 2004, appointment with Dr. Holthusen, Plaintiff was still trying to get his required knee surgery approved. Plaintiff underwent a second arthroscopic surgery on his right knee on October 18, 2005.
12. Regarding Plaintiff's October 18, 2005, right knee surgery in I.C. No. 924831, Dr. Holthusen testified that by January 30, 2006, Plaintiff was qualified for a sedentary job. As of *Page 12 
his February 7, 2006, deposition, Dr. Holthusen was of the opinion that Plaintiff had not reached maximum medical improvement from his second right knee surgery, but that he believed Plaintiff would reach that stage "in another three months." Dr. Holthusen opined that Plaintiff's right knee condition had worsened since September 27, 2001. Dr. Holthusen further opined that he thinks Plaintiff's permanent partial impairment rating will increase to perhaps twenty-five percent (25%) by the time he reaches maximum medical improvement.
13. Plaintiff's Form 21 Agreement for the right knee, whereby the parties agreed he was entitled to temporary total disability for "necessary weeks," gave Plaintiff a presumption of continuing temporary total disability. As of that time, Defendant had the burden of proving Plaintiff was no longer temporarily totally disabled. Plaintiff's subsequent execution of a Form 26 Agreement for twenty percent (20%) permanent partial impairment to the right knee eliminated that presumption of continuing total disability. Unless the Form 26 Agreement were to be set aside, to again establish total disability Plaintiff would have to show a material worsening of his right knee condition sufficient to satisfy the legal requirements for showing a change in condition under N.C. Gen. Stat. § 97-47.
14. With respect to a change in condition, based on the greater weight of the evidence, Plaintiff has shown that, following the execution of the Form 26 Agreement for his right knee in I.C. No. 924831, Plaintiff's condition worsened to the point where he required right knee surgery by October 1, 2003, and that Plaintiff was, at a minimum, totally disabled from working in any employment from the date of surgery on October 18, 2005, until November 18, 2005, the date of the hearing before the Deputy Commissioner in this matter. Because neither party has had an opportunity to present evidence concerning Plaintiff's disability following the November 18, 2005, Deputy Commissioner hearing, the Full Commission has no basis upon *Page 13 
which to address the extent of Plaintiff's disability after January 30, 2006, the date as of which Dr. Holthusen opined that Plaintiff was capable of sedentary work.
15. The Full Commission finds, based on the greater weight of the evidence, that Plaintiff was temporarily totally disabled as of the date of the November 18, 2005, hearing before the Deputy Commissioner in the present action.
16. Should the Form 26 Agreement in I.C. No. 924831 not be set aside, Plaintiff has proven a change of condition concerning Plaintiff's right knee under N.C. Gen. Stat. § 97-47 following the approval of the Form 26 Agreement on September 27, 2001, entitling Plaintiff to temporary total disability compensation beginning no later than October 18, 2005.
17. At the hearing before the Deputy Commissioner, Plaintiff testified that his left knee has also worsened and that he needs additional surgery on his left knee. Plaintiff presented evidence showing that Dr. Holthusen noted Plaintiff had bilateral knee problems on October 30, 2001; that on October 1, 2003, Dr. Holthusen found considerable patellofemoral crepitus on the left, and considerable loss of medial joint space in both knees; that on February 12, 2004, medical notes indicate Plaintiff reported complaints of continuing bilateral knee pain; and that on August 4, 2004, x-rays showed loose, unstable cartilage medially in both knees. Also, Dr. Holthusen was of the opinion that Plaintiff's left knee condition had worsened and that he will eventually need additional surgery on the left knee.
18. In Plaintiff's claim for his left knee in I.C. No. 953894, there was no Form 21 Agreement for payment of temporary total disability for "necessary weeks." Therefore, Plaintiff did not have a presumption of continuing temporary total disability for the left knee condition. However, at the time his left knee claim developed as of April 16, 1999, Plaintiff was already totally disabled due to his right knee condition. *Page 14 
19. Plaintiff has presented evidence sufficient to show that his left knee condition has worsened and is contributing to his current disability, that he will likely need surgery on his left knee in the future, and that his current disability is causally related to his admittedly compensable occupational diseases to both knees. Should the Form 21 Agreement in I.C. No. 953894 not be set aside, Plaintiff has established a change of condition due to the material worsening of his left knee pursuant to N.C. Gen. Stat.§ 97-47 following the approval of the Form 21 on December 7, 2001.
20. At the hearing before the Deputy Commissioner, Plaintiff also testified that, while at home on December 22, 2004, his knees locked up, causing him to fall forward and strike his head against a counter. Plaintiff reported to Dr. Holthusen at his January 2005 visit that he had fallen several times due to the locking and giving away of his right knee, but he did not report any specific injury. Plaintiff was given a hinged knee brace to diminish his chances of falling. Plaintiff testified before the Deputy Commissioner that he did not initially believe he was seriously injured due to hitting his head on the counter, but that he began experiencing persistent headaches in the months following the incident. Plaintiff testified that with these worsening symptoms, he sought medical treatment at PrimeCare on February 7, 2005. At that facility, Plaintiff reported stiffness in the right side of his neck, and x-rays of Plaintiff's cervical spine revealed some spurring and straightening of the spine. Plaintiff was diagnosed as having neck pain and spasms, and was instructed to continue taking pain medication.
21. On March 10, 2005, Plaintiff sought treatment for his neck from Dr. Matthew Germini, a chiropractor. Plaintiff reported the incident of December 22, 2004, to Dr. Germini, and indicated that he was experiencing a constant sharp pain and stiffness on the right side of his neck and upper shoulder, as well as headaches. After conducting an examination, Dr. Germini *Page 15 
diagnosed Plaintiff as having a cervical segmental dysfunction with associated cervical muscle spasms and thoracic segmental dysfunction. For these conditions, Dr. Germini provided a course of conservative chiropractic treatment. In correspondence dated March 29, 2005, Dr. Germini opined to a reasonable degree of chiropractic certainty that the conditions for which he treated Plaintiff were related to the December 22, 2004, fall. However, the Full Commission finds that there is insufficient evidence to establish that Plaintiff's cervical problems and headaches were causally related to his December 22, 2004, fall. Plaintiff did not seek medical treatment for these conditions until approximately two months after his fall.
22. Plaintiff contends that the Form 26 Agreement in I.C. No. 924831 and the Form 21 Agreement in I.C. No. 953894 should be set aside on the grounds that the Industrial Commission failed to conduct an appropriate review of these agreements to determine if the agreements were fair and just before approval. The provisions of N.C. Gen. Stat. § 97-82 that were in effect when the Form 26 and Form 21 Agreements were approved by the Industrial Commission are applicable to this case. The language of N.C. Gen. Stat. § 97-82(a) in existence in 2001 provides that memoranda of agreement must be accompanied by a full and complete medical report.
23. Based upon the competent evidence of record, the Form 26 and Form 21 Agreements for payment of permanent partial disability compensation submitted to the Commission for approval in I.C. Nos. 924831 and 953894, respectively, were not accompanied by the full and complete medical reports related to Plaintiff's work-related occupational diseases existing at the time of their respective submissions.
24. The relevant Form 21 and Form 26 Agreements in this matter both contain language stating: "Employee-Plaintiff has voluntarily removed himself from the workplace as *Page 16 
retired." Plaintiff was not eligible for retirement benefits from Defendant at the time he executed the form agreements. The report of the nurse case manager assigned to Plaintiff's claim dated July 12, 2000, more than a year before these agreements were approved, stated: "apparently [Plaintiff] does not qualify for retirement. He is not clear about the reason why but thinks it is due to his age (52)." The Form 53 of record herein indicates that the Commission returned the Form 26 which was initially submitted for the left knee, and among the instructions to Defendant-Carrier was: "Form 28 to state voluntarily retired." It appears that the Commission relied on the comments on both form agreements indicating plaintiff had removed himself from the work place as retired in making a decision to approve these agreements.
25. Plaintiff testified at the hearing before the Deputy Commissioner that he has not returned to work for Defendant or any other employer since August 17, 1998. At the time Plaintiff was evaluated for a final disability rating to his right knee on December 17, 1998, Dr. Holthusen noted that Plaintiff would not likely be able to have a job at any time in the future that involves climbing, squatting, or kneeling, all of which were required in his work for Defendant-Employer. Thereafter, the right knee did well for a while, but by November 16, 1999, Plaintiff was reporting episodes of "giving away." Plaintiff subsequently developed similar problems of occupationally-related pain, swelling, and "giving away" in his left knee, for which he underwent surgery, and he continued to experience worsening even before the agreements were approved.
26. Because the Form 26 Agreement in I.C. No. 924831 and the Form 21 Agreement in I.C. No. 953894 were not submitted with full and complete medical reports, the Commission did not have all the information it was required to review in order to determine whether the agreements were fair and just. Accordingly, Plaintiff has produced competent evidence to show that the Form 26 Agreement for payment of permanent partial disability in I.C. No. 924831 and *Page 17 
the Form 21 Agreement for payment of permanent partial disability in I.C. No. 953894 are voidable pursuant to N.C. Gen. Stat. § 97-82(a).
27. Ms. Pat Chambers, Workers' Compensation Claims Adjuster with AIG Claim Services, testified at the hearing before the Deputy Commissioner. Ms. Chambers explained that AIG currently serves as third-party administrator for Defendant, and that Cunningham-Lindsey acted as Defendant's third-party administrator prior to the time AIG began servicing the account. Ms. Chambers testified that she was not aware of the exact date AIG became Defendant's third-party administrator, but she has access to all documents relative to the claim. Additionally, Ms. Chambers testified that Plaintiff received temporary total disability compensation from August 17, 1998, through October 16, 2001, and additionally a total of eighty (80) weeks of permanent partial disability compensation in I.C. Nos. 924831 and 953894.
28. Regarding vocational rehabilitation, Ms. Chambers testified that Defendant's policy is that workers who are unable to return to work undergo vocational rehabilitation. Ms. Chambers further testified that this policy also extended to workers' compensation claims that are not settled. As for Plaintiff, Ms. Chambers testified that no vocational rehabilitation had been offered to him because he voluntarily removed himself from the workforce via retirement based on the language of the Form 21 and Form 26 Agreements. Also, Ms. Chambers testified that Defendant would have offered vocational rehabilitation to Plaintiff had he not settled his claims on Form 21 and Form 26 Agreements.
29. Considering Plaintiff's past vocational history, his injury to both knees, his job restrictions of no climbing, squatting, or heavy lifting, and the fact that his job at the time of injury involved most, if not all, of these restricted duties, the Commission would have been in a better position to determine whether Plaintiff's 2001 agreements to accept eighty (80) weeks of *Page 18 
permanent partial disability compensation under N.C. Gen. Stat.§ 97-31
were fair and just and provided the more favorable remedy for Plaintiff had the Commission reviewed Plaintiff's full and complete medical reports. Under the circumstances of this case, permanent partial disability under N.C. Gen. Stat. § 97-31 was not the more favorable remedy for Plaintiff at that time, as he had not returned to work and was entitled to a presumption of continuing temporary total disability under N.C. Gen. Stat. § 97-29 at the time. It follows that the Form 26 and Form 21 Agreements approved by the Industrial Commission in I.C. Nos. 924831 and 953894, respectively, were not fair and just at the time that they were approved.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has sustained compensable occupational diseases to his right leg, beginning September 23, 1997, and to his left leg, beginning April 16, 1999.
2. Form 21 and Form 26 Agreements for the payment of disability compensation are permitted under the Workers' Compensation Act pursuant to N.C. Gen. Stat. § 97-82. As set forth in the Order for the Full Commission by Buck Lattimore, Chairman, filed February 2, 2007, which is incorporated by reference herein, the statute applicable to the Form 26 Agreement approved by the Industrial Commission in I.C. No. 924831 on September 27, 2001, and the Form 21 Agreement approved by the Industrial Commission in I.C. No. 95389 on December 7, 2001, is the version of N.C. Gen. Stat. § 97-82 which was in effect when the agreements were approved by the Commission in September and December 2001. That version of the statute stated, in relevant part: "The memorandum of agreement,accompanied by a full and complete medical report, *Page 19 
shall be filed with and approved by the Commission; otherwise such agreement shall be voidable by the employee or his dependents." N.C. Gen. Stat. § 97-82(a) (2001) (emphasis added).
3. In Vernon v. Steven L. Mabe Builders, 336 N.C. 425, 444 S.E.2d 191
(1994), the Supreme Court of North Carolina held that the Workers' Compensation Act in general, and N.C. Gen. Stat. § 97-82 in particular, requires, on the part of the Commission, a full investigation and a determination that a Form 26 compensation agreement is fair and just, in order to assure that the settlement is in accord with the intent and purpose of the Act that an injured employee receive the disability benefits to which he is entitled. . . . Id. at 432, 444 S.E.2d 194-95. In Lewis v. Craven Regional Medical Center, 134 N.C. App. 438,518 S.E.2d 1 (1999), aff'd per curiam, 352 N.C. 668, 535 S.E.2d 33 (2000), the North Carolina Court of Appeals elaborated that "[t]he conclusion the agreement is fair and just . . . must come after a full review of the medical records filed with the agreement submitted to the Commission," Id. at 441, 518 S.E.2d at 3, citing to the language of N.C. Gen. Stat. § 97-82(a) as of 1998 that the agreement must be "`accompanied by a full and complete medical report,'" Id.
In Atkins v. Kelly Springfield Tire Co., 154 N.C. App. 512,571 S.E.2d 865 (2002), disc. review improvidently allowed, 358 N.C. 540,597 S.E.2d 128 (2004), the North Carolina Court of Appeals explained that
 In addition to the statutory mandate that the agreement be "accompanied by a full and complete medical report", N.C. Industrial Comm. R. 501(3) states "no agreement will be approved until all relevant medical, vocational and nursing rehabilitation reports known to exist in the case have been filed with the Industrial Commission." While Rule 503(3) does not define the term "relevant medical reports", reading 501(3) in light of N.C. Gen. Stat. § 97-82(a) leads us to conclude that relevant records include the full and complete medical records related to the work-related injury. *Page 20 
Id. at 513-14, 571 S.E.2d at 866 (emphasis added). Because the Form 21 Agreement at issue had been approved based only on a Form 25R Evaluation for Permanent Disability stamped with the treating physician's signature, the Court of Appeals reversed the decision of the Industrial Commission not to set aside the Form 21 Agreement and remanded the case to the Commission for a determination as to whether the agreement was "fair and just" based on a review of "all medical, vocational and rehabilitation records and data related to the work-related injury existing at the time the Form 21 agreement was submitted for original approval." Id. at 515, 571 S.E.2d at 867.
In Clawson v. Phil Cline Trucking, Inc., 168 N.C. App. 108,606 S.E.2d 715 (2005), the North Carolina Court of Appeals, relying onAtkins, affirmed the conclusion of the Industrial Commission that, because the Form 26 Agreement at issue had originally been approved without the submission of all of the plaintiff's medical records in existence at the time, "`[t]he Form 26 agreement in this claim, approved on February 3, 2000, should be declared null and void because the Commission did not have all relevant information within the possession of the parties.'" Id. at 111, 606 S.E.2d at 717 (emphasis added). The Court of Appeals rejected the defendants' contention that, because the plaintiff had had in his possession all of the relevant medical records, and therefore could have submitted the records with the Form 26 Agreement but did not, the plaintiff should be estopped from challenging the Form 26 Agreement on the basis of a lack of appropriate medical documentation. The Court of Appeals explained:
 Without regard to which party submitted the Form 26 Agreement to the Full Commission, the fact remains that the necessary and relevant medical records were not submitted with the Agreement. A full and complete medical report is essential for the deputy commissioner to accurately assess the proposed settlement agreement. Because the parties failed to file a full and complete medical report, *Page 21 
we conclude that the Full Commission properly invalidated the Form 26 Agreement.
Id. at 114, 606 S.E.2d at 719 (emphasis added).
4. In the present action, the Form 26 and Form 21 Agreements approved by the Industrial Commission in I.C. Nos. 924831 and 953894, respectively, were not accompanied by full and complete medical reports as required by N.C. Gen. Stat. § 97-82 as it existed at the time the agreements were approved. Accordingly, the Industrial Commission was unable to review those agreements in such a manner as to find them fair and just. Clawson v. Phil Cline Trucking, Inc., 168 N.C. App. 108,606 S.E.2d 715 (2005). Plaintiff has produced competent evidence showing that the Form 26 and Form 21 Agreements associated with I.C. Nos. 924831 and 953894, respectively, are voidable, and that they should be set aside as not fair and just. Id.
5. The Form 26 and Form 21 Agreements approved by the Industrial Commission in I.C. Nos. 924831 and 953894, respectively, were improvidently approved, are not fair and just, and should be set aside.Vernon v. Steven L. Mabe Builders, 336 N.C. 425, 444 S.E.2d 191 (1994);Clawson v. Phil Cline Trucking, Inc., 168 N.C. App. 108, 606 S.E.2d 715
(2005).
6. Having found, based on the greater weight of the evidence, that the Form 26 Agreement approved by the Industrial Commission in I.C. No. 924831 on September 27, 2001, and the Form 21 Agreement approved by the Industrial Commission in I.C. No. 953894 on December 7, 2001, are voidable and should be set aside, Plaintiff is returned to the same position he would have been in had those agreements not been approved. Therefore, Plaintiff is entitled to the presumption of continuing temporary total disability arising out of the Form 21 Agreement approved by the Industrial Commission on June 7, 1999, in I.C. No. 924831, pursuant to which Defendant accepted the compensability of Plaintiff's right knee claim and agreed to pay temporary total disability compensation for "necessary weeks": *Page 22 
 This Court has repeatedly held that a Form 21 agreement (approved by the Commission) represents an admission of liability by the employer for disability compensation pursuant to the Workers' Compensation Act (the "Act"). In this case a Form 21 was entered into by the parties and approved by the Commission. Once this Form 21 agreement was in place, a concomitant presumption of disability attached in favor of the employee. The Form 21 presumption of disability is a rule of law at least 25 years old, and is the equivalent of proof that plaintiff is disabled. After the presumption attached, "the burden shift[ed] to [the employer-defendant] to show that plaintiff is employable."
Kisiah v. W.R. Kisiah Plumbing, Inc., 124 N.C. App. 72, 77,476 S.E.2d 434, 436 (1996), disc. review denied, 345 N.C. 343,483 S.E.2d 169
(1997) (citations omitted). Because Defendant has failed to show that Plaintiff has regained the capacity to earn the wages which Plaintiff was receiving at the time he sustained an occupational disease to his right knee, Plaintiff must be deemed disabled pursuant to N.C. Gen. Stat. § 97-2(9).
7. Plaintiff has also established that he sustained a compensable occupational disease involving his left knee, which contributes to his continuing temporary total disability. N.C. Gen. Stat. § 97-2(9).
8. Because Plaintiff is disabled, Plaintiff is entitled to continuing total disability compensation for necessary weeks or until further order by the Commission, pursuant to N.C. Gen. Stat. § 97-29.
9. The Full Commission concludes that, had it not found voidable and set aside the Form 26 and Form 21 Agreements in I.C. Nos. 924831 and 953894, respectively, Plaintiff would have established a change of condition pursuant to N.C. Gen. Stat. § 97-47. However, because the Full Commission has found the Form 26 and Form 21 Agreements voidable and has set them aside, the Commission need not further address the issue of Plaintiff's change of condition. *Page 23 
10. Based upon the credible evidence of record, Plaintiff has failed to prove that his neck injury purportedly resulting from the December 22, 2004, knee-locking incident and fall is related to his admittedly compensable occupational diseases. See, e.g, Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 167, 265 S.E. 2d 389, 391 (1980); N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. The Form 26 and Form 21 Agreements approved by the Industrial Commission in I.C. Nos. 924831 and 953894, respectively, were improvidently approved and are not fair and just, and are therefore hereby set aside.
2. Defendant shall receive a credit for the 80 weeks of permanent partial disability paid to Plaintiff.
3. Subject to the attorney's fee hereinafter approved and the credit to Defendant for the 80 weeks of permanent partial disability compensation already paid pursuant to the Form 26 and Form 21 Agreements (set aside herein), Defendant shall resume payment to Plaintiff of temporary total disability compensation at the rate of $473.14 per week from October 17, 2001, the day after Plaintiff's initial temporary total disability compensation was terminated, and continuing for necessary weeks or until further order by the Commission. That portion of temporary total disability compensation that has accrued shall be paid in a lump sum.
4. A reasonable attorney's fee of 25% of the compensation due Plaintiff is approved for Plaintiff's counsel, and shall be paid as follows: 25% of the lump sum due Plaintiff shall be *Page 24 
deducted and paid directly to Plaintiff's attorney; thereafter, every fourth compensation check due Plaintiff shall be deducted and paid directly to Plaintiff's attorney.
5. Defendant shall pay all medical expenses incurred or to be incurred in the future by Plaintiff as a result of Plaintiff's occupational diseases to his right and left knees in accordance with procedures adopted by the Commission.
6. Plaintiff's claim for benefits related to neck injuries from his December 22, 2004, fall is hereby DENIED.
7. Defendant shall pay the costs.
This the ___ day of December, 2007.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ DANNY LEE McDONALD COMMISSIONER
 S/_____________ BUCK LATTIMORE COMMISSIONER
 *Page 1