* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good grounds to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with certain modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act. *Page 2 
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. The Carrier on the risk for the Defendant in this claim was Crum Forster;
5. The Plaintiff sustained an admittedly compensable injury on August 31, 2006, arising out of and in the course and scope of his employment.
6. An employment relationship existed between the employee and employer on August 31, 2006.
7. The employee's average weekly wage was determined to be $537.70, yielding a compensation rate of $358.47.
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 45 years old. Plaintiff reached the twelfth grade in school. He served in the Army from 1980 to 1983 and was honorably discharged. Since then, Plaintiff has worked primarily as a truck driver or mechanic.
2. Plaintiff had worked for Defendant-Employer driving tractor-trailers for approximately two months as a truck driver prior to his injury.
3. Around 9:00 a.m. on August 31, 2006, Plaintiff was working when his foot slipped off of the clutch causing his left ankle to be hit by the clutch and his left knee to hit a handle on the cab of the truck. Plaintiff testified, and the Full Commission finds, that when this happened, he felt a very sharp pain and got out of the truck to try and walk it off.
4. Plaintiff reported this incident to a dispatcher or driver, Jim, present at the time. Plaintiff continued to work that day until about 11:30 p.m. that night. *Page 3 
5. When getting out of the truck at the end of the day, Plaintiff was favoring his left leg because his left knee and ankle were swollen. He slipped off of a step with his right foot. Plaintiff fell, striking his left hip on the truck step. After the second injury, Plaintiff had pain in his left ankle, knee, and hip, across his back, and in his right knee.
6. After unhooking his trailer and picking up paperwork, Plaintiff got back in his truck and called Chip, the dispatcher in Rockingham. He told Chip what had happened and described his pain. Chip responded that he did not think Plaintiff was "covered." Plaintiff said he would give it a couple of days to see if he felt better.
7. When Plaintiff's pain did not subside, Plaintiff called Defendant-Employer and was told to go to the Emergency Room. Plaintiff presented to Richmond Memorial Hospital in Rockingham, North Carolina, on September 5, 2006. He was diagnosed with contusions, a knee sprain and a hip injury by Steven B. Collins, PA-C, and was prescribed Vicoprofen for pain. Mr. Collins referred Plaintiff to Pinehurst Surgical for orthopedic evaluation.
8. Plaintiff was seen by Kevin Slater, PA-C, at Pinehurst Surgical on September 18, 2006, and was instructed to return to work on September 19, 2006, at sedentary work only with no truck driving.
9. Plaintiff filed a Form 18 on September 19, 2006.
10. On September 20, 2006, Plaintiff was contacted by Ms. Jessica Breshears at Defendant-Employer and told to report to work the following day at the terminal in Fayetteville, North Carolina, for a position auditing log books.
11. At all times relevant, Plaintiff lived in Morven, North Carolina, which is approximately an eighty-mile drive each way to and from Fayetteville. *Page 4 
12. Prior to his injury, Plaintiff had worked out of Defendant-Employer's Rockingham office, only about seventeen miles from his home.
13. Plaintiff advised Ms. Breshears that he could not accept the position in Fayetteville due to a lack of reliable transportation to make that commute each day and his poor physical condition. Plaintiff asked if any work was available at the Rockingham office, but was told there was not. Plaintiff inquired whether he would receive any compensation while out of work and did not receive an answer.
14. On October 3, 2006, Plaintiff's counsel wrote to the Fraud division of the Industrial Commission regarding insurance coverage for Plaintiff's injuries and copied Defendant-Employer. The Commission had previously indicated to Plaintiff that Defendant-Employer was uninsured, and Defendants had failed to respond to Plaintiff's Form 18.
15. Defendant-Employer thereafter provided Plaintiff with a copy of a Form 19 dated September 20, 2006, which included Defendant-Carrier's information.
16. On October 6, 2006, Plaintiff's counsel wrote to defense counsel advising of the September 20, 2006 offer of work in Fayetteville and Plaintiff's lack of reliable transportation. The letter also advised that Plaintiff would be willing to attempt work within his restrictions in Rockingham, if available. Plaintiff's counsel inquired as to whether temporary total disability compensation would be started.
17. On October 9, 2006, Plaintiff underwent an MRI for his left knee. The MRI report of the left knee showed focal high grade chondromalacia patella, medial patellar facet, and a cyst arising from the proximal tibio-fibular joint extending along the anterior margin of the proximal fibula, consistent with a synovial or ganglion cyst. It also showed minimal joint effusion and no internal derangement or occult bone injury. *Page 5 
18. On October 11, 2006, Plaintiff returned to see Mr. Slater at Pinehurst Surgical. Mr. Slater confirmed that the MRI showed significant chondromalacia patella of the left knee, which he noted would be secondary to Plaintiff's climbing up and down trucks during his lifetime. Mr. Slater noted Plaintiff's complaint of constant aching pain that was worse later in the day. Mr. Slater diagnosed left greater trochanteric bursitis, left knee chondromalacia patella, and left ankle pain. He continued Plaintiff on sedentary duty for two weeks, after which he could return to regular duties. Plaintiff was prescribed Lodine, an anti-inflammatory, and his pain medication was renewed.
19. On October 26, 2006, Plaintiff's counsel's office sent correspondence to defense counsel advising that a medical case manager with Southern Rehabilitation Network, Inc., had met with Plaintiff and indicated that Defendant-Employer had work available in Rockingham for Plaintiff. Plaintiff's counsel's correspondence noted that while Plaintiff was allegedly released to full duty work as of October 25, 2006, he had been out of work since August 31, 2006, and had not received any benefits during that time period. As a result, Plaintiff's water was turned off on October 25, 2006, and his power and phone service were set to be disconnected on November 1, 2006. This evidence was also supported by Plaintiff's hearing testimony. The letter further indicated that Plaintiff was willing to try to return to work, but he now did not have the money to get to Rockingham.
20. On October 31, 2006, Plaintiff filed a Form 33 with the Industrial Commission citing that Defendants had not filed a response to Plaintiff's Form 18 and had verbally refused to pay indemnity benefits while Plaintiff was out of work, but had paid for medical treatment.
21. Plaintiff was finally able to see an orthopedic doctor, Dr. John Moore, IV, on November 9, 2006. Dr. Moore noted that Plaintiff had experienced no relief in symptoms and *Page 6 
that the prescription medication was not working. Dr. Moore scheduled a bone scan and gave Plaintiff a prescription for Ultram. Plaintiff was placed on sedentary work restrictions.
22. The bone scan was completed on November 15, 2006, and showed focal increased uptake in the left patella, lateral tibial plateau at the knee joint, right medial compartment anterior tibial tubercle, and patella of the right knee joint. There were also focal small areas of increased activity around both knee joints.
23. Plaintiff presented to Dr. Moore on November 21, 2006, to review the bone scan results. Plaintiff complained of pain in both knees, his left ankle, left hip, and lower back. He was using a single point cane to help him walk. Dr. Moore diagnosed internal derangement of the left knee. After discussing a number of options for continuing care, Plaintiff chose to proceed with conservative treatment. Plaintiff's sedentary work restrictions were continued.
24. Plaintiff returned to Dr. Moore on December 12, 2006, with continued significant pain in his left knee and severe pain in his right knee due to compensating for his left side. Plaintiff also had continued lower back pain and left-sided radicular symptoms. Dr. Moore indicated that although Plaintiff's left knee condition could eventually require surgery, he did not feel that Plaintiff would benefit from surgical intervention at that time. Dr. Moore prescribed Plaintiff Mobic and determined that Plaintiff was at maximum medical improvement. Dr. Moore assigned sedentary work restrictions.
25. Defendants filed a Form 60 accepting the claim as compensable on December 15, 2006. The Form 60 indicated that the claim was accepted on a medical only basis. Defendants failed to comply with the requirements of N.C. Gen. Stat. § 97-18 and Industrial Commission Rule 601 by failing to admit or deny the compensability of Plaintiff's claim in a timely manner. *Page 7 
26. On December 20, 2006, Plaintiff underwent a Functional Capacity Evaluation ("FCE"). Alex S. Arab, PT, the FCE evaluator, indicated that due to sub-maximal effort during the evaluation, Plaintiff's maximal ability to work was unknown; nonetheless, Plaintiff was able to work at the sedentary physical demand level for an eight-hour work day with a leg lift capacity of zero pounds and a torso lift capacity of zero pounds. The FCE indicated that sub-maximal effort could be secondary to pain, and Plaintiff testified that the FCE was painful and that the pain affected his ability to perform it.
27. Dr. Moore saw Plaintiff again on January 4, 2007. Plaintiff reported that he was still experiencing daily pain that was activity limiting, was unable to climb stairs, and required anti-inflammatory and narcotic medications. Dr. Moore reiterated that Plaintiff had reached MMI with regard to his injuries and assessed a "4% whole person impairment related to his antalgic gait, his persistent trochanteric bursitis, as well as the exacerbation of his knee symptoms which he related to his most recent injury." Despite this statement and the results of the FCE, Dr. Moore released Plaintiff to return to work without restrictions. Plaintiff responded with concerns for his safety if he returned to work at his regular job, and Plaintiff and Dr. Moore discussed vocational rehabilitation as an option. Dr. Moore noted that he did not feel that any surgical intervention would be indicated in the near future.
28. Dr. Moore later testified that he rarely uses FCEs and that Plaintiff's sub-maximal effort could have been due to pain or lack of effort. Dr. Moore testified that he released Plaintiff without work restrictions because he did not feel that Plaintiff would injure himself permanently by attempting to return to work as a truck driver. Dr. Moore also testified that, implicit in the work restrictions, if Plaintiff did not feel that he could drive a truck due to pain, he should consider finding another job. *Page 8 
29. Plaintiff was terminated by Defendant-Employer on February 12, 2007.
30. Plaintiff testified that Dr. Moore suggested that he try to drive a tractor trailer, and if it caused too much pain, to consider other employment. In accordance with Dr. Moore's direction, Plaintiff tried driving a friend's dump truck but was unable to operate it because of his pain. At the time, he was no longer employed by Defendant-Employer and driving the dump truck was a fair approximation of driving a tractor trailer.
31. Plaintiff testified at hearing that he could not drive a truck anymore because it hurt him too much to climb in and out of the cab. He also had trouble operating the clutch. Prior to these accidents, Plaintiff never missed any time out of work due to pain in his joints, but he has been unable to return to driving a truck because of pain since the accident.
32. Plaintiff received approximately $1,900.00 in unemployment benefits while he was out of work for his compensable injuries. During that time, plaintiff looked for alternate work near his home and eventually found work within his ability at Allen's Professional Investigations, Inc., as a security guard/night watchman earning $7.00 per hour. Plaintiff was hired on March 6, 2007, to work part time at first and later full time, earning $280.00 dollars per week as of the date of the hearing.
33. The job consists of intervals of sitting and standing and Plaintiff stated that he can tolerate it. Plaintiff testified that he can sit for one hour or so at a time and can stand for about 30 minutes at a time without pain.
34. Plaintiff testified that he used his cane until about April 2007 to help with his knee pain.
35. After a follow-up appointment in November 2007, Dr. Moore recommended in response to a letter from Plaintiff's counsel that Plaintiff see a back specialist for his work-related *Page 9 
injury. He later testified that he believed that Plaintiff should see a specialist for his back, but he did not mean to offer the opinion that this was related to his compensable injuries.
36. Overall, in his deposition testimony, Dr. Moore deferred to the Commission on whether Plaintiff was being truthful about his complaints of pain and how the accidents happened. If the Commission found that Plaintiff was being truthful and accurate in his testimony, then Dr. Moore felt that Plaintiff increased pain in his left knee and hip would be results of the compensable accidents. If the Commission found that he was not truthful and accurate in that regard, then Dr. Moore's opinion would change accordingly.
37. The Full Commission finds that Plaintiff was being truthful in his testimony about his pain and how the accidents occurred.
38. The Full Commission finds that the position offered to Plaintiff in Fayetteville was not suitable due to the unreasonable distance of the required commute and Plaintiff was justified in refusing it.
39. The Full Commission finds that Plaintiff was unable to return to full duty work in October 2006 despite Mr. Slater's anticipatory full duty release. The anticipatory release was contradicted by Dr. Moore's subsequent restriction of Plaintiff to sedentary work only in early November 2006. Moreover, even if Plaintiff had been able to return to his regular work at the Rockingham office, Plaintiff had reached an untenable financial situation due to Defendants' failure to handle the claim properly, as discussed below. Plaintiff's refusal of any available work at the Rockingham office at that time was justified.
40. Plaintiff's testimony that his pain was such that he could not go back to driving a truck is given considerable weight by the Commission. Plaintiff is credible on this issue, especially because he suffered such financial straits by not returning to his truck driving job. It *Page 10 
also defies reason that Plaintiff would return to work in a security guard position earning $7.00 per hour if he could have returned to work earning considerably more as a truck driver, a job he had performed for most of his adult life.
41. The evidence establishes that Plaintiff made reasonable efforts to locate other employment, but was unsuccessful in his efforts until March 6, 2007.
42. The Full Commission finds that Plaintiff was totally disabled by his injuries from September 19, 2006, the date he was placed on sedentary work restrictions, until March 6, 2007, the date he returned to work as a Security Guard.
43. With respect to Plaintiff's eventual return to work, the Full Commission finds that Plaintiff suffered a reduction in his wage-earning capacity as a result of the compensable injuries by accident.
44. Defendants did not file their I.C. Form 33R, response to Plaintiff's request for hearing, until August 20, 2007, though Plaintiff's Form 33 was filed in October 2006. Defendants' Form 33R was filed well beyond the 45 days required pursuant to I.C. Rule 603 and, therefore, was untimely filed.
45. Defendants' asserted defense in their Form 33R was that Plaintiff was precluded from receiving indemnity benefits due to his refusal of suitable employment, or that he had not returned to work after being released without restrictions. Defendants did not assert that Plaintiff had not experienced any disability as a result of his injury.
46. It thus appears that Defendants untimely and improperly filed a Form 60 accepting the claim on a "medical only" basis. The proper procedure in this case would have been for Defendants to file a Form 60 accepting the claim and to begin paying compensation in a timely *Page 11 
manner, then to follow proper legal channels and file a Form 24 Application or Form 33 to terminate or suspend Plaintiff's compensation for the alleged unjustified refusal to return to work.
47. Defendants' actions in this case merit the imposition of a ten percent (10%) penalty pursuant to N.C. Gen. Stat. § 97-18(g) on all qualifying accrued compensation.
48. It is determined based upon the record in its entirety that Defendants' actions have frustrated the primary purpose of the Workers' Compensation Act, which is to provide timely compensation to injured employees. Defendants' continued defense of this claim to hearing before the Deputy Commissioner and Full Commission was without reasonable grounds and amounts to stubborn, unfounded litigiousness.
 * * * * * * * * * * *
Based on the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained compensable injuries by accident at work on August 31, 2006, resulting in injuries to his left hip, left knee, and left foot. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was disabled due to his injuries by accident from September 19, 2006 until March 6, 2007. N.C. Gen. Stat. § 97-29. Plaintiff's pain from his compensable injuries contributed to his disability and limitations. See Niple v. Seawell Realty InsuranceCo., 88 N.C. App. 136, 362 S.E.2d 572 (1987). Plaintiff did not unjustifiably refuse suitable employment in this case. N.C. Gen. Stat. § 97-32.
3. Plaintiff is presumed to have earning capacity commensurate with his actual post-injury earnings. Tyndall v. Walter Kidde Co.,102 N.C. App. 726, 730, 403 S.E.2d 548, 550 (1991). Plaintiff has shown that he suffered a diminished earning capacity as a result of his compensable injury after he returned to work at lesser wages on March 6, 2007. N.C. Gen. Stat. *Page 12 
§ 97-30.
4. While Plaintiff is entitled to permanent partial disability benefits under N.C. Gen. Stat. § 97-31, it appears that temporary partial disability compensation under N.C. Gen. Stat. § 97-30 would be his more favorable remedy. See Vernon v. Mabe, 336 N.C. 425, 444 S.E.2d 191
(1996).
5. Plaintiff is entitled to have Defendants provide all medical treatment necessitated by his August 31, 2006 compensable injuries, including an evaluation with a back specialist regarding the relation of his back condition to his compensable injuries and a second opinion evaluation on his rating with the physician of Plaintiff's choice. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-27.
6. Defendants failed to timely file a Form 60 and may be subjected to sanctions. N.C. Gen. Stat. § 97-18(b) and I.C. Rules 601 and 802(1) and (2).
7. Defendants failed to follow statutory procedures and Rules which govern the termination of compensation benefits and may be subjected to sanctions. N.C. Gen. Stat. § 97-18.1 and N.C.I.C. Rules 404 and 802(1) and (2).
8. Defendants failed to timely file a Form 33R and may be subjected to sanctions. I.C Rules 603 and 802(1) and (2).
9. As a direct and proximate consequence of Defendants' failure to properly and timely file its Form 60, Defendants failed to make compensation payments to Plaintiff when due within the time required and as a result the imposition of the ten percent (10%) penalty is required. N.C. Gen. Stat. § 97-18(g).
10. The Commission has the authority to assess the whole cost of proceedings, including reasonable attorneys' fees, against a party who has brought, prosecuted, or defended a *Page 13 
hearing without reasonable grounds. N.C. Gen. Stat. § 97-88.1.
11. Defendants are entitled to a credit for any unemployment benefits paid to Plaintiff prior to his return to work on March 6, 2007. N.C. Gen. Stat. § 97-42.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to Plaintiff at the stipulated compensation rate from September 19, 2006 through March 6, 2007. This amount has already accrued and shall be paid in a lump sum.
2. Defendants shall pay temporary partial disability compensation to Plaintiff beginning March 6, 2007, not to exceed the statutory limitation of 300 weeks from the date of injury. Accrued compensation shall be paid in a lump sum.
3. Such compensation as is presently owed and due to Plaintiff under Paragraphs 1 and 2 of this Award are subject to a ten percent (10%) penalty imposed pursuant to N.C. Gen. Stat. § 97-18(g). Defendants shall pay the penalty amount to Plaintiff in a lump sum.
4. A reasonable attorney fee of twenty-five percent (25%) of the compensation due Plaintiff under Paragraphs 1, 2, and 3 of this Award is approved for Plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum due Plaintiff under Paragraphs 1, 2, and 3 of this Award shall be paid directly to Plaintiff's counsel by Defendants as part of the cost of this action and shall not be deducted from the compensation due Plaintiff. Plaintiff's counsel shall thereafter receive every fourth check of ongoing compensation.
5. Defendants are fined $2,000.00 for their failure to timely file a Form 60. *Page 14 
6. Defendants are fined $2,000.00 for their failure to follow statutory procedures and Rules for termination of benefits.
7. Defendants are fined $2,000.00 for their failure to timely file a Form 33R.
8. Defendants shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of his compensable injuries for as long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or tend to lessen the period of disability, when bills for the same have been approved in accordance with the provisions of the Act.
9. Defendants are entitled to a credit for the unemployment benefits paid to Plaintiff prior to his return to work on March 6, 2007.
10. Defendants shall pay the costs.
This the ___ day of February 2009.
S/_______________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/_______________________ BERNADINE S. BALANCE COMMISSIONER
 S/_______________________ DANNY L. McDONALD COMMISSIONER *Page 1