***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Griffin with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission, and that the Commission has jurisdiction of the parties and the subject matter.
2. All parties are subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
3. On June 14, 2004, an employer-employee relationship existed between plaintiff and defendant, Steven E. Clark d/b/a Young Buck Construction.
4. On June 14, 2004, State Farm Fire Casualty was the insurer of record for defendant, Steven E. Clark d/b/a Young Buck Construction.
5. Pursuant to a Form 22 Wage Chart, on that date, plaintiff was employed at an average weekly wage of $523.60, which would be sufficient to yield a compensation rate of $349.08 per week.
6. On that date, plaintiff suffered a compensable injury by accident and the same was admitted pursuant to a Form 60, which was filed on July 1, 2004.
7. Plaintiff returned to work with defendant-employer on or about December 21, 2004 at which time a Form 28T was filed.
8. Following a second period of disability, the employee returned to work for defendant-employer on or about January 20, 2005 at which time a Form 28 was filed.
9. Plaintiff filed a notice of worsening of condition on January 21, 2008 citing a January 18, 2008 onset date.
 ***********
The following were submitted before the Deputy Commissioner as: *Page 3 
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement
2. Stipulated Exhibit Number 2, Industrial Commission Forms, Medical Records, Plaintiff's Responses to Interrogatories, Notice of Worsening of Condition filed by Plaintiff and Photographs of Plaintiff's Scars from the Injury
3. Plaintiff's Exhibits Numbered 1, 2, 3, 4, 5, 6 and 7 are various medical records, which are also a part of Stipulated Exhibit Number 2
 ***********
The following were received into evidence before the Deputy Commissioner as:
 DEPOSITIONS
1. Oral deposition of Robert Elkins, M.D., taken on April 21, 2008 with Deposition Exhibit Number 1 attached to the deposition transcript.
2. Oral deposition of Michael K. Kaczmarek, M.D., taken on May 5, 2008.
3. Oral deposition of Douglas M. Burch, D.C., taken on May 6, 2008.
4. Oral deposition of James M. Iglehart, M.D., taken on May 30, 2008 with Deposition Exhibit Number 1 attached to the deposition transcript.
5. Oral deposition of T. Kern Carlton, III, M.D., taken on August 11, 2008 with Exhibit Number 1 attached to the deposition transcript.
 ***********
The following were submitted to the Deputy Commissioner as:
 ISSUES
1. Whether defendants can force plaintiff to make an election of remedies by filing a Form 33 Request that Claim be Assigned for Hearing. *Page 4 
2. What are the compensable consequences of plaintiff's injuries.
3. Whether plaintiff sustained an injury to his back as the result of his compensable injury by accident on June 14, 2004.
4. Whether plaintiff is entitled to lifetime medical treatment for his injury because his condition has worsened.
5. Whether plaintiff should be awarded attorney fees under N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the undersigned, plaintiff was 32 years old. Plaintiff completed secondary school in Mexico, which is similar to a 9th grade education in the United States.
2. Prior to his employment with defendant-employer, plaintiff worked in the carpentry and construction business for approximately 10 years.
3. On June 14, 2004, plaintiff sustained a compensable injury by accident when he fell, impaling himself on a 2x4, which punctured his perirectal area and crossed the rectum and the very lower part of the colon before puncturing through the colon in the right pelvic region behind the bladder. The 2x4 did not impact the sacrum or any other part of the spine. Plaintiff was impaled some 14 to 16 inches onto the 2x4 so that his feet were still 3 feet off of the ground.
4. Plaintiff was transported by ambulance to NorthEast Medical Center in Concord, North Carolina, where he underwent surgery to repair his rectal laceration and a colostomy, *Page 5 
which was performed by Dr. James Iglehart. During the surgery, Dr. Iglehart saw no damage to the spine from the impalement by the 2x4. Plaintiff was discharged from the hospital on June 25, 2004.
5. Plaintiff returned to Dr. Iglehart for follow-up appointments on July 13, 2004 and July 28, 2004. On July 28, 2004, Dr. Iglehart released plaintiff to return to light duty work. Dr. Iglehart's notes do not reflect any complaints by plaintiff of back pain on either July 13 or July 28, 2004.
6. On his August 30, 2004 follow-up appointment with Dr. Iglehart, plaintiff complained to Dr. Iglehart of back pain in his lower mid back, which had started since his last visit with Dr. Iglehart. Dr. Iglehart noted that plaintiff did not exhibit any pain upon pressure and no point tenderness. He opined that plaintiff's complaints of back pain were the result of referred pain due to the surgery and plaintiff's inactivity following surgery.
7. On September 7, 2004, as a result of his continuing lower back pain, plaintiff underwent x-rays of the thoracic and lumbar spine, which did not reveal any bony abnormalities. Dr. Scott Baker noted that an MRI would be useful if there was an ongoing concern of spinal trauma, but an MRI was not performed at that time.
8. On September 30, 2004, plaintiff followed up again with Dr. Iglehart with "no complaints." Dr. Iglehart referred plaintiff to Dr. William A. Walker for evaluation of his anal continence prior to reversal of his colostomy.
9. On October 14, 2004, Dr. Walker performed an anorectal region evaluation of plaintiff. Dr. Walker noted that plaintiff's only complaint at the time of the examination was back pain. *Page 6 
10. On November 5, 2004 plaintiff underwent a colostomy reversal by Dr. Iglehart. He was discharged from the hospital on November 8, 2004. Following the surgery, plaintiff followed up with Dr. Iglehart on November 16, 2004. Dr. Iglehart's notes do not reflect any complaints of back pain by plaintiff at that time.
11. On December 16, 2004, Dr. Iglehart found that plaintiff had "no complaints" apart from some generalized abdominal pain, and released plaintiff to return to work with no restrictions. However, plaintiff was taken out of work again for two weeks on December 29, 2004 with complaints of increasing rectal pain accompanied by bloody discharge. Dr. Iglehart reviewed plaintiff's condition again on January 13, 2005 and concluded that plaintiff's rectal and abdominal pain was a temporary condition. In none of Dr. Iglehart's December 2004 and January 2005 medical notes is there any mention of complaints of back pain by plaintiff.
12. After being released by Dr. Iglehart to return to work with no restrictions, plaintiff returned to work with defendant-employer on January 20, 2005. Plaintiff moved into the position as "lead man", performing his prior job duties as well as additional supervisory duties.
13. Plaintiff saw Dr. Iglehart again on February 15, 2005; April 22, 2005; and July 25, 2005. Dr. Iglehart's notes for those visits do not reflect any complaints by plaintiff of back pain.
14. In October 2005, Dr. Iglehart's office changed to electronic charting. The notes for plaintiff's October 18, 2005, appointment with Dr. Iglehart accordingly include a "review of symptoms" indicating that plaintiff was complaining of skin rash and skin color changes, abdominal pain and bloody stool, back pain and joint pain, and excessive thirst. The notes do not reflect any discussion with Dr. Iglehart at that appointment concerning plaintiff's back pain. *Page 7 
15. On June 27, 2006, plaintiff sought treatment at the emergency room for low back pain, which had increased in severity the day before. Plaintiff, through an interpreter, described his pain as traveling from the left side of his back down into his left buttock with occasional radiation into his left leg. Plaintiff was unable to point to a definite injury causing his back pain. The emergency room physician, Dr. Michael Kaczmarek, concluded a possible diagnosis of a disc injury or strain. He treated plaintiff with steroids and muscle relaxers and recommended an MRI if the pain continued. Dr. Kaczmarek testified that he was not sure and did not know whether the June 14, 2004 workplace injury was the cause of plaintiff's then-present low back condition.
16. The next day following his emergency room visit, plaintiff returned to Dr. Iglehart with continued back pain, which he described as a dull ache with shooting and burning sensations with a sudden onset three days prior. Again, plaintiff was unable to point to a definite injury causing his back pain. Dr. Igelhart testified that the back pain prescribed by plaintiff on June 28, 2006 was different than the back pain plaintiff had described in previous visits. On June 28, 2006, plaintiff was reporting more significant pain and radiation down the left buttocks and leg, which he had not reported to Dr. Igelhart in the past. Dr. Igelhart further opined that he did not have the expertise to relate the June 28, 2006 back complaints to plaintiff's compensable June 14, 2004 injury.
17. On September 13, 2006, plaintiff underwent an MRI, which revealed a large left paracentral disc herniation at L5-S1 with mass effect and displacement of the left S1 nerve root and a central annular tear with small right paracentral disc protrusion at L4-5 with minimal mass effect on the right L5 nerve root. *Page 8 
18. On December 15, 2006, plaintiff sought treatment for his back at Burch Chiropractic Center where he reported experiencing back pain almost continuously since the work-related injury. Due to the nature and extent of his injuries, Dr. Burch elected not to treat plaintiff with conservative chiropractic care. He recommended plaintiff have an orthopaedic and neurological examination.
19. On January 18, 2008, plaintiff sought treatment at the emergency room with complaints of increasing abdominal pain, which was accompanied by vomiting. A CT scan of the abdomen revealed a small bowel obstruction. Plaintiff underwent surgery and was discharged after approximately 4 days of hospitalization. Plaintiff filed with the Industrial Commission a "Notice of Worsening Condition" at that time.
20. On July 16, 2008, plaintiff presented to Dr. T. Kern Carlton, an expert in physical medicine and pain rehabilitation for an independent medical evaluation of his back. It was noted that plaintiff could not remember when his back pain started. However, when Dr. Carlton questioned plaintiff, through an interpreter, about an onset date of June 2006, which correlated to the emergency room visit, plaintiff responded affirmatively. Dr. Carlton further questioned plaintiff about the onset date, stating that "I explained to him that this would be two years after his injury, and he said that this sounded right." Because plaintiff reported a 2-year delay in the onset of his back symptoms from his compensable injury, Dr. Carlton opined that is was too difficult to state the accident was the direct cause of his current back condition.
21. At the direction of defendants, Dr. Robert Elkins, an orthopaedic surgeon, conducted an Independent Medical Evaluation by reviewing plaintiff's medical records. Dr. Elkins did not examine plaintiff in conjunction with his evaluation. Based on his review of the medical records, Dr. Elkins opined that the large disc herniation with nerve impingement found *Page 9 
in the September 2006 MRI was consistent with the back and leg pain that plaintiff complained of in June 2006, but that "[a] disc of that this size would probably have caused symptoms earlier" had the herniation occurred at the time of plaintiff's June 2004 workplace injury. Because the medical records did not reflect any complaints by plaintiff prior to June 2006 of symptoms of sciatica such as back pain with pain extending into plaintiff's leg, particularly after plaintiff returned to work in January 2005, Dr. Elkins opined that plaintiff's back condition was not related to his compensable impalement injury.
22. Dr. Burch opined that plaintiff's low back pain and referred left leg pain was a direct result of the impalement occurring on June 14, 2006. He opined that more probably than not, plaintiff's increase in symptoms in June 2006 was a continuation of the original injury that occurred at impalement.
23. Based on a review of all the evidence, including lay and expert medical testimony as well as a review of all of the medical records, the Full Commission finds that plaintiff did not make consistent reports of similar low back pain from the date of the injury until he sought emergency room treatment on June 27, 2006 for increasing back pain, which at that time was radiating down the buttocks and left leg. The back pain for which plaintiff sought treatment on June 27, 2006 was different from the pain he reported to Dr. Iglehart and Dr. Walker over several visits within the first year of his incident.
24. Based on the inconsistent reports of Plaintiff's history of back pain, the Full Commission assigns greater weight to the medical testimony of Dr. Elkins than Dr. Burch on the issue of causation. Thus, the record is insufficient to establish that plaintiff's current back condition is causally related to the June 14, 2004 injury by accident. *Page 10 
25. As a result of his compensable injury of June 14, 2004, plaintiff has sustained a permanent injury to his anus due to continued stool leakage and poor control of gas.
26. To repair the area impaled by the 2x4, Dr. Iglehart needed to cut the peritoneum, which is the outside layer of the colon and the outside layering of the musculature of the abdominal cavity. This area is now weaker and hernias may develop due to the weakened state of the peritoneum. As a result of his compensable injury of June 14, 2004, plaintiff has sustained permanent injury to his peritoneum.
27. Plaintiff sustained permanent injury to the skin and underlying tissue at the site of his injury on his abdomen, which are important external organs of the body, as a result of his compensable injury of June 14, 2004.
28. Dr. Iglehart testified that the fact that plaintiff has had one bowel obstruction makes him more likely to have another one, and that plaintiff may need further care at that point. However, Dr. Iglehart testified that there is no need for further surgery on plaintiff's colon. The Full Commission finds Dr. Iglehart's testimony on this matter to be credible.
29. Defendants did not engage in stubborn, unfounded litigiousness in bringing this action.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On June 14, 2004, plaintiff sustained an admittedly compensable injury by accident when he was impaled by a 2x4 causing damage to his anus and abdominal areas. N.C. Gen. Stat. § 97-2(6). *Page 11 
2. The evidence of record is insufficient to establish that plaintiff's current back condition is causally related to the June 14, 2004 compensable injury by accident. Thus, plaintiff is not entitled to any benefits under the Act for his back condition. N.C. Gen. Stat. § 97-2(6).
3. Defendants were entitled to bring the issue of whether plaintiff should be required to elect a remedy for permanent partial disability before the Industrial Commission. N.C. Gen. Stat. § 97-83; Polk v. Nationwide Recyclers,Inc., ___ N.C. App. ___, 664 S.E.2d 619 (2008).
4. Plaintiff is entitled to the most munificent remedy under the Workers' Compensation Act. At this time, in that plaintiff has reached maximum medical improvement and has been found to have sustained permanent injury to important internal and external organs or parts of the body, the appropriate award is under N.C. Gen. Stat. § 97-31(24). See Vernon v. Steven L. MabeBuilders, 336 N.C. 425, 444 S.E.2d 191 (1994).
5. Plaintiff reached maximum medical improvement with respect to the injuries he sustained as a result of his compensable injury by accident. As a result, plaintiff is entitled to receive proper and equitable compensation for permanent injuries to his important internal and external organs. N.C. Gen. Stat. § 97-31(24).
6. As a result of his injury by accident on June 14, 2004, plaintiff has sustained injury to an important internal organ, his anus, for which plaintiff is entitled to proper and equitable compensation in the amount of $20,000.00. N.C. Gen. Stat. § 97-31(24).
7. As a result of his injury by accident on June 14, 2004, plaintiff has sustained injury to an important internal organ, his peritoneum, for which plaintiff is entitled to proper and equitable compensation in the amount of $10,000.00. N.C. Gen. Stat. § 97-31(24).
8. As a result of his injury by accident on June 14, 2004, plaintiff has sustained permanent injury to the skin and underlying tissue at the site of his injury on his abdomen, which *Page 12 
are important external organs of the body for which he is entitled to receive proper and equitable compensation not to exceed $5,000.00. N.C. Gen. Stat. § 97-31(24).
9. As a result of his compensable injuries, plaintiff is entitled to receive further medical treatment that would effect a cure, give relief or lessen his period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
10. Plaintiff has not shown that he has a "substantial risk" of needing further medical treatment due to his compensable injury. Therefore, plaintiff is not entitled to lifetime medical benefits at this time. N.C. Gen. Stat. § 97-25.1
11. Defendants did not engage in stubborn, unfounded litigiousness in bringing this action. N.C. Gen. Stat. § 97-88.1
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff $20,000.00 for the permanent injury to his anus. This amount has accrued and shall be paid to plaintiff in one lump sum.
2. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff $10,000.00 for the permanent injury to his peritoneum. This amount has accrued and shall be paid to plaintiff in one lump sum.
3. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff $5,000.00 for the permanent injury to the skin and underlying tissue at the site of his injury on his abdomen. This amount has accrued and shall be paid to plaintiff in one lump sum. *Page 13 
4. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of his compensable injuries, when bills for the same have been submitted according to proper Industrial Commission procedure.
5. Plaintiff's claim for benefits associated with his back condition is HEREBY DENIED.
6. Plaintiff's claim for lifetime medical benefits is HEREBY DENIED at this time.
7. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraphs 1, 2 and 3 of this AWARD is approved for plaintiff's counsel and shall be paid by defendants as follows: 25% of the accrued compensation due plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to plaintiff's counsel.
8. Defendants shall bear the costs.
This the 25th day of September, 2009.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ STACI MEYER COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION *Page 14 
 S/___________________ SDANNY L. McDONALD COMMISSIONER *Page 1